## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

MILTON AL STEWART, ACTING            )
SECRETARY OF LABOR,                  )
UNITED STATES DEPARTMENT OF LABOR,   )
                                     )
                                     )
                                     )
                        Petitioner,  )        Miscellaneous Action
           v.                        )        No. 1:21-00345
                                     )
                                     )
CSG PARTNERS, LLC,                   )
                                     )
                                     )
                        Respondent.  )
_____)


### MEMORANDUM OF LAW IN SUPPORT OF PETITION TO ENFORCE
### ADMINISTRATIVE SUBPOENA *DUCES TECUM*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ................................................................................................1

ARGUMENT ......................................................................................................................5

I.      The Secretary of Labor Is Authorized by Statute to Issue Subpoenas in Order to Investigate Violations of ERISA and May Enforce Such Subpoenas in This Court .......................5

    A.    The Investigation is Conducted Pursuant to a Legitimate Purpose ....................6

    B.    The Demand for Records Is Relevant to the Secretary's Lawful Purpose .........8

    C.    The Documents and Records Are Not within the Agency's Possession ............9

    D.    The Administrative Steps Required by the Statute Have Been Followed ..........9

II.     The Secretary's Demand is Not Improper or Unreasonably Broad or Burdensome ........10

    A.    CSG Has Not Met The Standard to Show Undue Burden ................................10

    B.    CSG Has Not Met Its Burden to Show the Applicability of the Attorney-Client Privilege .................................................................................11

    C.    CSG Has Not Met Its Burden to Show the Applicability of the Work Product Doctrine .15

III.    An Order Is Necessary to Prevent a Lapse of the Statute of Limitations ........................16

CONCLUSION ..................................................................................................................17

# TABLE OF AUTHORITIES

Cases

*Acosta v. Wilmington Tr., N.A.*,
   No. 17-CV-6325 (VSB)(KNF), 2019 WL 416329 (S.D.N.Y. Feb. 1, 2019) .................... 13, 14

*Adlman, II*
   134 F.3d 1194 (2d Cir. 1998) .................................................................................... 15

*Allen v. GreatBanc Tr. Co.*,
   835 F.3d 670 (7th Cir. 2016) ...................................................................................... 8

*Bank of the United States v. Asia Pulp & Paper Co. Ltd.*,
   232 F.R.D. 103 (S.D.N.Y. 2005) .............................................................................. 13

*Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg, New York*,
   171 F. Supp. 3d 136 (S.D.N.Y. 2016) ...................................................................... 15

*Bowne v. New York City, Inc. v. AmBase Corp.*,
   150 F.R.D. 465 (S.D.N.Y. 1993) .............................................................................. 16

*Dole v. Trinity Industries, Inc.*,
   904 F.2d 867 (3d Cir. 1990) ....................................................................................... 8

*Donovan v. Mehlenbacher*,
   652 F. Supp. 2d 228 (2d Cir. 1981) ............................................................................ 6

*E.E.O.C. v. Maryland Cup Corp.*,
   785 F.2d 471 (4th Cir.1985) ..................................................................................... 11

*E.E.O.C. v. Morgan Stanley & Co.*,
   132 F. Supp. 2d 146 (S.D.N.Y. 2000) ...................................................................... 11

*E.E.O.C. v. United Parcel Serv., Inc.*,
   587 F.3d 136 (2d Cir. 2009) ..................................................................................... 10

*Fisher v. United States*,
   425 U.S. 391 (1976).................................................................................................. 11

*Gucci Am., Inc. v. Guess?, Inc.*,
   271 F.R.D. 58 (S.D.N.Y. 2010) ................................................................................ 16

*Halo v. Yale Health Plan*,
   819 F.3d 42 (2d Cir. 2016) ......................................................................................... 7

*In re Copper Mkt. Antitrust Litig.*,
   200 F.R.D. 213 (S.D.N.Y. 2001) .............................................................................. 13

*In re County Erie*,
   473 F.3d 413 (2d Cir. 2007) ................................................................................ 12

*In re Grand Jury Subpoena Dated July 6, 2005*,
   510 F.3d 180 (2d Cir. 2007) ................................................................................ 15

*In re Grand Jury Subpoena Duces Tecum Dated September 15*,
   *1983*, 731 F.2d 1032 (2d Cir.1984) .................................................................... 11

*In re McVane*,
   44 F.3d 1127 (2d Cir. 1995) ............................................................................ 6, 9

*Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*,
   No. 03-CIV-5560(RMB)(HBP), 2007 WL 473726 (S.D.N.Y. Feb. 14, 2007) ...... 15

*Long Island Precast, Inc. v. U.S. Dep't of Labor*,
   No. 14-MC-0772 (JS), 2014 WL 3735943 (E.D.N.Y. July 29, 2014)...................... 8

*Lowen v. Tower Asset Mgmt., Inc.*,
   829 F.2d 1209 (2d Cir. 1987) ............................................................................... 8

*Martin v. Valley Nat. Bank of Arizona*,
   140 F.R.D. 291 (S.D.N.Y. 1991) ........................................................................ 12

*Narayanan v. Sutherland Glob. Holdings, Inc.*,
   285 F. Supp. 3d 604 (W.D.N.Y. 2018)................................................................ 13

*N.L.R.B. v. Am. Med. Response, Inc.*,
   438 F.3d 188 (2d Cir. 2006) ......................................................................... 6, 9, 10

*Harris v. Jacobson*,
   13-MC-213 (JPO) (S.D.N.Y.)............................................................................. 14

*Press Pub. Co. v. Walling*,
   327 U.S. 186 (1946)............................................................................................. 6

*RNR Enterprises, Inc. v. S.E.C.*,
   122 F.3d 93 (2d Cir. 1997) ................................................................................... 6

*S.E.C. v. Brigadoon Scotch Distrib. Co.*,
   480 F.2d 1047 (2d Cir. 1973) ............................................................................... 7

*United States v. Constr. Products Research, Inc.*,
   73 F.3d 464 (2d Cir. 1996) ...................................................................... 12, 15, 16

*United States v. Demauro*,
   581 F.2d 50 (2d Cir. 1978) ................................................................................ 12

*United States v. Ghavami*,
    882 F. Supp. 2d 532 (S.D.N.Y. 2012) ................................................................ 13

*United States v. Morton Salt Co.*,
    338 U.S. 632 (1950) ................................................................................... 7, 8

*United States v. Powell*,
    379 U.S. 48 (1964) ............................................................................. 6, 10, 11

*United States v. White*,
    853 F.2d 107 (2d Cir. 1988) ................................................................................ 6

*Upjohn v. United States*,
    449 U.S. 383 (1981) ....................................................................................... 11

*von Bulow v. von Bulow*,
    811 F.2d 136 (2d Cir. 1987) .............................................................................. 12

*Wall v. Constr. & Gen. Laborers' Union, Local 230*,
    224 F.3d 168 (2d Cir. 2000) .............................................................................. 17

Statutes

15 U.S.C. §§ 49, 50 ........................................................................................... 5, 9

29 U.S.C. § 1001 ................................................................................................... 6

29 U.S.C. § 1002(2) .............................................................................................. 1

29 U.S.C. § 1002(9) .............................................................................................. 2

29 U.S.C. § 1113 ................................................................................................. 16

29 U.S.C. § 1134 ............................................................................................... 5, 9

29 U.S.C. § 1134(a) ......................................................................................... 1, 2, 7

29 U.S.C. §§ 1103, 1104, & 1106 ............................................................................. 7

29 U.S.C. §§ 1104(a), 1106(a) ................................................................................. 8

Rules

Fed. R. Civ. P. 26(b)(3) ........................................................................................ 15

Other Authorities

Transcript. ................................................................................................................................. 14

## PRELIMINARY STATEMENT

Petitioner Milton Al Stewart, Acting Secretary of Labor, United States Department of Labor (the "Secretary"), brings this action to require CSG Partners, LLC ("CSG") to comply with the administrative subpoena issued on November 6, 2020 by the Regional Director of the New York Office, Employee Benefits Security Administration ("EBSA"), United States Department of Labor.  The subpoena was served on CSG in connection with an investigation being conducted pursuant to § 504(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1134(a).

Over the last year, the Secretary has attempted through various means to obtain CSG's compliance with the Secretary's proper document requests. CSG, however, continues to improperly withhold documents raising broad claims of attorney-client privilege and claiming undue burden.  However, CSG has failed to demonstrate the applicability of asserted attorney-client privilege, including that there has been no waiver of any attorney-client privilege claims that others might have due to the presence of CSG and other third parties.  The Secretary asks this Court to enforce the subpoena by ordering CSG to produce the overdue documents required by the subpoena so that the Secretary can continue his investigation.  The Secretary also asks that the Court toll the statute of limitations until CSG has fully complied.

## STATEMENT OF FACTS

On November 28, 2017, the New York Regional Office of EBSA opened an investigation of five employee stock ownership plans ("ESOPs"), which are employee pension benefit plans within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2).  Consistent with § 504(a) of ERISA,

29 U.S.C. § 1134(a), a purpose of the investigation is to determine whether any person[1] had violated or is about to violate Title I of ERISA or any regulation or order issued thereunder. Herzog Decl. ¶ 5.

The five ESOPs, which had been formed in 2016 and 2017, were sponsored by five separate employers: (1) Choate Construction Company; (2) E & M Logistics, Inc.; (3) Envision Management Holding, Inc.; (4) Highland Homes Holdings, Inc.; and (5) W BBQ Holdings, Inc. Herzog Decl. ¶ 5, Ex. A.  However, they all had a common trustee. Herzog Decl. ¶ 5. Coincidentally, four of the five ESOPs had something else in common:  each ESOP bought stock from its sponsoring company's prior shareholders, and CSG served as a financial advisor to the selling shareholders for four ESOPs that is investigating.[2]

CSG is a boutique investment bank, located in New York, New York, that provides an array of financial services specializing in ESOPs.  CSG's services include helping clients through every stage of establishing an ESOP, including feasibility analytics, structuring, capital raising, negotiating, and closing.  CSG also offers services related to post-transaction "ESOP maintenance," including refinancing, secondary sales, and buybacks.  EBSA's investigation suggested that CSG, as financial advisor to the sellers, had designed the principal terms of the transactions forming four of the ESOPs, and provided post-transaction services to at least some of them.  Herzog Decl. ¶ 6.  Therefore, EBSA's investigation of the ESOPs involved CSG.  *Id.*

On February 19, 2019, EBSA sent document requests to CSG concerning ESOP transactions involving Choate Construction Company, E & M Logistics Inc., Envision Management Holding, Inc., and W BBQ Holdings, Inc. (the "Transactions").  Herzog Decl. ¶ 6;

---

[1] "Person" is defined to mean "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization."  ERISA § 3(9), 29 U.S.C. § 1002(9).
[2] CSG was not involved with Highland Homes Holdings, Inc.'s ESOP.

Ex. A.  On April 5, 2019, CSG responded by sending EBSA documents related to each of the Transactions, as well as a privilege log for each Transaction identifying communications CSG withheld under the attorney-client privilege.  Herzog Decl. ¶ 7.

On March 20, 2020, CSG produced supplemental versions of the four privilege logs to EBSA without providing any detailed explanations for the many assertions of privilege, except to say: "CSG withheld these documents to protect the privilege of the respective companies, and therefore cannot agree to waive that privilege unilaterally."  Herzog Decl.¶ 8, Ex. B.  CSG informed EBSA on April 17, 2020 that it had completed its document productions for each company.  Herzog Decl. ¶ 9.  Thereafter, EBSA and CSG continued a dialogue that resulted in CSG producing supplemental documents and supplemental privilege logs, but CSG continued to withhold a significant number of critical documents under the aforementioned broad assertions of attorney-client privilege, which it refused to expand upon.  Herzog Decl. ¶ 10.

On August 21, 2020, the Secretary's counsel contacted CSG's counsel requesting to meet and confer about CSG's (1) failure to establish the elements of the attorney-client privilege; (2) assertions of privilege lacking connection to any identified lawyer; and (3) failure to explain why the attorney-client privilege was not waived where documents were shared with third parties.  *Id.* Citing Second Circuit precedent, the Secretary's counsel also explained that CSG failed to set forth facts to justify its assertions of the attorney-client privilege and non-waiver of that privilege, vis-à-vis the functional equivalent doctrine, where the privilege logs showed purportedly privileged documents were shared with persons outside of each company and its counsel.  *Id.*

On September 23, 2020, counsel for CSG responded that since receiving the Secretary's counsel's e-mail, "we have worked to connect with counsel representing each of the companies you identified in order for the companies to evaluate whether they intended to continue to assert

privilege over the documents at issue.  We have not yet received each company's decision." *Id.*
CSG's counsel also rejected the Secretary's request to discuss the issues, asserting that a phone
call would not "be particularly fruitful at this stage" because "CSG is leaving the final
determination as to whether to treat these documents as privileged to the company." *Id.*

On November 6, 2020, Thomas Licetti, Regional Director of the New York Regional
Office of EBSA, issued a subpoena to CSG demanding that, no later than November 20, 2020 at
10:00 a.m., CSG produce documents and records.  Herzog Decl. ¶ 11, Ex. C.  The subpoena
required (1) "All of your communications concerning or relating to the Transactions," and (2) "All
of your communications concerning or with the [s]ellers, both pre- and post-Transaction," both for
the period of January 1, 2014 to the date of production. Herzog Decl., Ex. C, Attachment B.  On
November 6, 2020, EBSA supervisory investigator Carol Herzog served the subpoena upon the
CSG's custodian of records.  Herzog also sent a copy of the subpoena to Melanie M. Lazor, CSG's
counsel.  Herzog Decl. ¶ 13.

On November 19, 2020, EBSA received a letter from CSG's counsel, in which CSG
objected to the subpoena in whole, claiming that it was "overbroad, unduly burdensome, and
vague, and seeks documents protected by the attorney/client privilege and/or work product
doctrine."  Herzog Decl., Ex. D.  Acknowledging the attorney-client privileges belonged to the
companies, CSG also maintained its non-disclosure agreement obligations required it to protect
each company's allegedly privileged attorney-client communications and that it would not disclose
those communications to the Secretary without consent from each company.  *Id.* at 3.  Further,
CSG broadly averred "there is no doubt that CSG was the functional equivalent of an employee
for purposes of the attorney/client privilege because CSG was an essential part of each company's
ESOP transaction legal team." *Id.* at 4.  CSG did not identify any specific individuals or the alleged

corporate roles those individuals served in each of the ESOP transaction legal teams.  *Id.*  In all this time CSG also has not produced a single document in response to the subpoena.

## ARGUMENT

I.   **The Secretary of Labor Is Authorized by Statute to Issue Subpoenas in Order to Investigate Violations of ERISA and May Enforce Such Subpoenas in This Court.**

In support of the Secretary's enforcement duties, ERISA § 504 gives EBSA broad authority to conduct investigations "to determine whether any person has or is about to violation any provision of" Title I of ERISA or any regulation or order issued under that Title. 29 U.S.C. § 1134. For the purposes of any such investigation, EBSA may examine witnesses and document and may command testimony using administrative subpoenas.  Specifically, ERISA § 504(c) provides:

> [T]he provisions of [sections] 9 and 10 (relating to the attendance of witnesses and the production of books, records, and documents) of the Federal Trade Commission Act (15 U.S.C. 49, 50) are hereby made applicable (without regard to any limitation in such sections respecting persons, partnerships, banks, or common carriers) to the jurisdiction, powers, and duties of the Secretary or any officers designated by him . . . .

*Id.* § 1134(c).[3]  Subpoenas issued under ERISA are enforceable in U.S. district court. *See* 15 U.S.C. § 49 (providing that if the subject of an agency subpoena disobeys that subpoena, the agency "may invoke the aid of any court of the United States in requiring the attendance and testimony of witnesses and the production of documentary evidence."); *Donovan v. Mehlenbacher*, 652 F. Supp. 2d 228, 230 (2d Cir. 1981) ("[T]he Department of Labor clearly has the power to issue subpoenas in the course of an investigation conducted under statutory authority, and to have those subpoenas enforced by federal courts.") (citing *Okla. Press Pub. Co. v. Walling*, 327 U.S. 186, 200-01 (1946)).

---

[3] Section 9 of the Federal Trade Commission Act, 15 U.S.C. § 49, provides, "[T]he Commission shall have the power to require by subpoena the attendance and testimony of witnesses and the production of all such documentary evidence relating to any matter under investigation . . . ."

"The courts' role in a proceeding to enforce an administrative subpoena is extremely limited." *In re McVane*, 44 F.3d 1127, 1135 (2d Cir. 1995) (internal quotations and citations omitted). The agency must show only that (1) the investigation is conducted pursuant to a legitimate purpose; (2) that the inquiry may be relevant to that purpose; (3) that the information is not already in the agency's possession; and (4) that the administrative steps required by statute have been followed. *RNR Enterprises, Inc. v. S.E.C.*, 122 F.3d 93, 96 (2d Cir. 1997) (quoting *United States v. Powell*, 379 U.S. 48, 57-58 (1964)). An agency's burden to prove these criteria "is minimal." *United States v. White*, 853 F.2d 107, 111 (2d Cir. 1988) (holding that "an affidavit of an agent involved in the investigation" will suffice). "A subpoena that satisfies these criteria will be enforced unless the party opposing enforcement demonstrates that the subpoena is unreasonable, or issued in bad faith or for some other improper purpose, or that compliance would be unnecessarily burdensome." *N.L.R.B. v. Am. Med. Response, Inc.*, 438 F.3d 188, 192-93 (2d Cir. 2006) (internal quotations and citations omitted).

EBSA's subpoena satisfies all of the requirements for enforcement, and CSG cannot meet its burden to show that enforcement would be improper.

### A.   The Investigation is Conducted Pursuant to a Legitimate Purpose.

ERISA is a comprehensive remedial statute enacted to promote the interests of participants and beneficiaries in employee benefit plans, and to protect contractually defined benefits. 29 U.S.C. § 1001; *Halo v. Yale Health Plan*, 819 F.3d 42, 47-48 (2d Cir. 2016). Title I of ERISA establishes, among other things, the duty of fiduciaries to act solely in the interests of the plan participants and beneficiaries, to act prudently and with the requisite amount of care and skill, to avoid self-dealing or engaging in prohibited transactions with parties in interest to the plan, and that all assets of the plan are to be held in trust. ERISA §§ 403, 404, & 406; 29 U.S.C. §§ 1103,

1104, & 1106.  The Secretary has primary responsibility for enforcing Title I of ERISA, and he

can institute civil actions to obtain relief necessary to restrain violations.  Under section § 504(a)

of ERISA, the Secretary has broad authority to investigate, specifically:

> the power, in order to determine whether any person has violated or is about
> to violate any provision of this subchapter or any regulation or order
> thereunder – (1) to make an investigation, and in connection therewith to
> require the submission of reports, books, and records, and the filing of data
> in support of any information required to be filed with the Secretary under
> this subchapter, and (2) to enter such places, inspect such books and records
> and question such persons as he may deem necessary to enable him to
> determine the facts relative to such investigation, if he has reasonable cause
> to believe there may exist a violation of this subchapter or any rule or
> regulation issued thereunder of if the entry is pursuant to an agreement with
> the plan.

29 U.S.C. § 1134(a).

Here, EBSA acts pursuant to this investigatory authority.  The purpose of this investigation

is to determine whether anyone "violated or is about to violate" any provision of Title I of ERISA.

*See* 29 U.S.C. § 1134(a).  EBSA does not need probable cause of violations to show that the

information sought is relevant to the investigation or within the Agency's subpoena power.  *United

States v. Morton Salt Co.*, 338 U.S. 632, 642-43 (1950); *S.E.C. v. Brigadoon Scotch Distrib. Co.*,

480 F.2d 1047, 1053 (2d Cir. 1973), *cert. denied*, 415 U.S. 917 (1974).  As the U.S. Supreme Court

has explained, an agency "can investigate merely on suspicion that the law is being violated, or

even just because it wants assurance that is not."  *Morton Salt*, 338 U.S. at 642-43.  As with the

federal agency in *Morton Salt Co.*, EBSA is statutorily empowered to determine whether the ESOP

has been in compliance with Title I of ERISA, and EBSA's subpoena requesting documents from

CSG, an entity providing financial services to a party engaged with the trustee of ERISA-covered

plans, such as the ESOPs here, is a proper avenue of inquiry.

**B.      The Demand for Records Is Relevant to the Secretary's Lawful Purpose.**

For purposes of enforcing an administrative subpoena, courts interpret relevance broadly. In order meet the standard, "[i]t is enough that the information sought is relevant to any inquiry that the Secretary is authorized by law to undertake." *Long Island Precast, Inc. v. U.S. Dep't of Labor*, No. 14-MC-0772 (JS), 2014 WL 3735943, at *5 (E.D.N.Y. July 29, 2014) (quoting *Dole v. Trinity Industries, Inc.*, 904 F.2d 867, 874 (3d Cir. 1990)).

The Secretary is seeking documents from CSG related to CSG's work associated with four ESOPs. Specifically, the subpoena seeks "communications concerning or relating to the Transactions" and "communications concerning or with the [s]ellers, both pre- and post-Transaction" for a defined period. Herzog Decl. ¶ 11; Ex. C, Attachment B. Thus, the terms of the subpoena's two specifications "are relevant, not too indefinite, and are reasonable." *Long Island Precast*, 2014 WL 3735943, at *5 (quoting *Mehlenbacher*, 652 F.2d at 231). The documents sought are necessary to determine whether the ESOPs were established and administered prudently and in the best interests of its participants, and whether the prohibited transactions that occurred here were non-exempt. *See* 29 U.S.C. §§ 1104(a), 1106(a); *see also Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 676 (7th Cir. 2016) (citing *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1215 (2d Cir. 1987) and noting that ESOP formation transactions are prohibited under ERISA, and that defendants bear the burden showing their compliance with statutory exemptions). CSG's belief that these materials are irrelevant is, itself, irrelevant. The court "defers to the agency's appraisal of relevancy, which must be accepted so long as it is not obviously wrong." *Am. Med. Response*, 438 F.3d at 193 (quoting *In re McVane*, 44 F.3d at 1135).

Because the subpoena seeks information connected to EBSA's investigation into the ESOPs and their fiduciaries' compliance with the requirements of ERISA, it is therefore enforceable.

### C.     The Documents and Records Are Not within the Agency's Possession.

Although CSG notes that it previously has produced other documents, it has not produced any documents in response to EBSA's subpoena.  Herzog Decl. ¶¶ 14-15; Ex. C.  In doing so, CSG continues to withhold a wide swath of documents the Department does not possess.  *Id.*  In fact, the Secretary does not know exactly how many thousands of documents CSG has withheld, because CSG has not produced privilege logs, as required by the subpoena, Herzog Decl., Ex. C at 5-6, but has simply objected to the requests as a class.  Herzog Decl. ¶¶ 16-17, Ex. D.

### D.     The Administrative Steps Required by the Statute Have Been Followed.

The Secretary followed all the administrative steps that ERISA requires to issue the subpoena.  The subpoena *duces tecum* was issued pursuant to statutory authority, and it was signed by the Regional Director of the New York Regional Office of EBSA.  *See* 15 U.S.C. § 49; 29 U.S.C. § 1134; Herzog Decl. ¶ 11, Ex. C.  In accordance with Secretary's Order 01-2003 and EBSA Order No. 01-15 (Aug. 3, 2015), the Regional Director is delegated the authority to conduct investigations and issue subpoenas.  Herzog Decl. ¶ 12.  On November 6, 2020, EBSA served the subpoena on CSG's custodian of records and counsel.  Herzog Decl. ¶ 13.  Thus, CSG had actual and timely notice of the subpoena and EBSA's service was appropriate.

## II.    The Secretary's Demand is Not Improper or Unreasonably Broad or Burdensome.

Once an agency demonstrates the requirements for enforcement of an administrative subpoena have been met, the burden shifts to the respondent to show that the information requested is unreasonable, or issued in bad faith or for other improper purpose, or that compliance would be

unnecessarily burdensome.  *See E.E.O.C. v. United Parcel Serv., Inc.*, 587 F.3d 136, 139 (2d Cir. 2009) (citing *Am. Med. Response*, 438 F.3d at 193).  Where a subpoena is issued for the improper purpose of "to harass[ing] or pressur[ing] the subject of the investigation," the courts will not enforce it; however, where the "agency inquiry is authorized by law and the materials sought are relevant to the inquiry, [respondent's] burden is not easily met."  *United States v. Powell*, 379 U.S. 48, 58 (1964).

CSG cannot meet this demanding burden here.

## A.    CSG Has Not Met The Standard to Show Undue Burden.

EBSA has sought to work with CSG to obtain full compliance with its document requests. *Id.*  Since April 2019, EBSA Supervisory Investigator Herzog and her team have continuously and cooperatively worked with CSG's counsel, in meetings and through correspondence, to schedule witness interviews and to understand CSG's document productions.  Herzog Decl. ¶¶ 7-10.  CSG's contention that the subpoena's "lack of focus amounts to an unduly burdensome request for a review of every business file of CSG," Herzog Decl., Ex. D at 3, is perplexing because the subpoena is limited to the production of all communications concerning or relating to the Transactions and concerning or with the sellers, both pre- and post-Transaction.  Herzog Decl., Ex. C, Attachment B.  Moreover, the subpoena defines "Transaction" as "the purchase of shares of Company stock and/or establishment of the plan" and it also defines "Seller" as limited to "anyone who owned shares of Company stock and sold them as part of a Transaction, including his or her agents or others acting on his behalf."  *Id.*  Thus, the Secretary believes CSG was retained as a financial advisor based on its expertise in relation to ESOPs and the Secretary has no reason to believe that any communications with the sellers would not relate to the ESOPs.  Herzog Decl. ¶ 6.

Likewise, CSG's vague contention that the subpoena lacks focus does not meet this Court's standard for non-enforcement, which would require CSG to show "'that the cost of gathering this information is unduly burdensome in light of the company's normal operating costs.'" *E.E.O.C. v. Morgan Stanley & Co.*, 132 F. Supp. 2d 146, 161 (S.D.N.Y. 2000) (quoting *E.E.O.C. v. Maryland Cup Corp.*, 785 F.2d 471, 479 (4th Cir.1985)). Even if CSG does not maintain its files by transaction (which would be surprising), simple word searches will readily produce the documents sought without meaningful burden.

**B.     CSG Has Not Met Its Burden to Show the Applicability of the Attorney-Client Privilege.**

The attorney-client privilege shields from disclosure confidential communications between an attorney and his or her client made for the purpose of obtaining legal advice. *See Upjohn v. United States*, 449 U.S. 383, 389 (1981). "Accordingly it protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Fisher v. United States*, 425 U.S. 391, 403 (1976). When determining whether the privilege may shield both the client's communication and the corresponding legal advice, courts in the Second Circuit examine the following elements:

> (1) where legal advice of any kind is sought (2) from a profession legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.

*United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 119 F.3d 210, 214 (2d Cir. 1997) (citing *In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983*, 731 F.2d 1032, 1036 (2d Cir.1984)). "This burden requires an evidentiary showing by competent evidence . . . and cannot be 'discharged by mere conclusory or ipse dixit assertions.'" *Martin v. Valley Nat. Bank of Arizona*, 140 F.R.D. 291, 302 (S.D.N.Y. 1991) (quoting

*von Bulow v. von Bulow*, 811 F.2d 136, 144, 146 (2d Cir. 1987)).  The proponent of a privilege has the burden to "demonstrate fulfillment of all the legal requirements for application of the privilege." *United States v. Constr. Products Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996).

The attorney-client privilege does not apply in the absence of an attorney-client relationship, which is important here because it is undisputed that CSG was neither the attorney nor the client to any of the withheld communications.  *See, e.g.*, *United States v. Demauro*, 581 F.2d 50, 55 (2d Cir. 1978) (rejecting effort to exclude witness testimony where defendant failed to carry burden of showing that communications were made in the course of an attorney-client relationship).  CSG acknowledges that it "is not claiming the attorney/client privilege on its own behalf," but it claims to be doing so on behalf of its business clients.  Herzog Decl. ¶ 16, Ex. D at 3.  However, to date, CSG has not disclosed whether any of the companies directed CSG to assert privileges for them nor has CSG explained why the companies have yet to decide whether to continue asserting privileges, as described by CSG's counsel more than five months ago on September 23, 2020.  Valdez Decl., ¶ 4.

Therefore, CSG has failed to establish an attorney-client relationship, that the communications at issue are somehow encompassed within that relationship, and that there has been no waiver of the attorney-client privilege by virtue of CSG's and other third parties' inclusion on the subject communications.  *In re County Erie*, 473 F.3d at 413, 419 (2d Cir. 2007) (holding the attorney-client privilege only applies to a communication that "was intended to be and was in fact kept confidential.").  As the court has explained, "voluntary disclosure of confidential material to a third party generally results in forfeiture of any applicable attorney-client privilege." *United States v. Ghavami*, 882 F. Supp. 2d 532, 537 (S.D.N.Y. 2012);

A limited fact-intensive exception to this rule, known the "functional equivalent doctrine," provides that "communications between a company's lawyers and its independent contractor merit protection if, by virtue of assuming the functions and duties of [a] full-time employee, the contractor is a de facto employee of the company." *Exp.-Imp. Bank of the United States v. Asia Pulp & Paper Co. Ltd.*, 232 F.R.D. 103, 113 (S.D.N.Y. 2005); *In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213, 219 (S.D.N.Y. 2001).  Three factors are critical to showing that a consultant should be considered the functional equivalent of an employee: (1) "the consultant had a primary responsibility for a key corporate job"; (2) "there was a continuous and close working relationship between the consultant and the company's principals on matters critical to the company's position in litigation"; and (3) "the consultant is likely to possess information possessed by no one else at the company." *Asia Pulp & Paper Co. Ltd.*, 232 F.R.D. at 113.  In addition to these factors, whether the consultant "retained the authority to make decisions on the issues about which [it] was consulted" may be relevant.  *Narayanan v. Sutherland Glob. Holdings, Inc.*, 285 F. Supp. 3d 604, 617 (W.D.N.Y. 2018).  CSG has wholly failed to establish any of these factors.

CSG's arguments are not new in the context of investment banks providing services to sellers to ESOPs.  At least twice before, Southern District courts have considered such claims, and, both times, it has rejected them.

More recently, in 2019, a court addressed similar claims of privilege in the context of the HCMC ESOP, where Daroth, a competitor of CSG's, provided similar financial services.  *See Acosta v. Wilmington Tr., N.A.*, No. 17-CV-6325 (VSB)(KNF), 2019 WL 416329 (S.D.N.Y. Feb. 1, 2019).  There, the Secretary challenged 50 documents that had been withheld citing the attorney-client privilege.  The Secretary noted, if privileges could be asserted "'over communications sent to or received by Daroth—a third-party investment bank that provided HCMC with standard-fare

investment banking services of the kind it provided to a number of other clients at the time—
simply because Daroth provided a service that HCMC could not perform itself or offered advice
that HCMC and its attorneys found helpful, then the privilege would extend to communications
with any service provider.'" *Id.* at *3 (quoting the Secretary's brief).  The court agreed with the
Secretary that the documents were not privileged because (1) respondents failed to show an
attorney-client relationship between Daroth and HCMC or HCMC's counsel, and (2) any privilege
that might have existed between HCMC and its counsel "was waived by including Daroth in those
communications."  *Id.* at 6.

Six years earlier, a Southern District court also rejected these same claims of privileges and
functional equivalent arguments in the case of communications involving the People Care ESOP
and BCC Capital Partners, another competitor of CSG.  *Harris v. Jacobson*, 13-MC-213 (JPO)
(S.D.N.Y.).  The Court granted the subpoena for the reasons stated on the record,[4] in which the
Court noted that BCC had not been given a corporate office and e-mail address, which may have
evidenced the independent contractor's integration into the corporation, but was "just a third party
. . . hired to do a task."  Valdez Decl. ¶ 5, Ex. A (Transcript at p. 16, dated 8/6/13), Minute Order
in Miscellaneous Action No. 13-213 (JPO) (Aug. 8, 2013).  The Court continued, "And the fact
that you hired them to do this big ESOP transaction is not a piece of legal advice . . . it's a big
financial transaction."  *Id.*  The Court held that respondents failed to meet their "burden of
establishing [BCC was] acting as functional employees in the relevant sense," and it rejected

---

[4] On August 8, 2013, the Court entered a Minute Order in Miscellaneous Action No. 13-213 (JPO) that reads as
follows: "Minute Order: Entry for proceedings held before J. Paul Oetken: Motion Hearing held on 8/6/13. The
Secretary of Labor's Petition to Enforce Administrative Subpoenas is granted to the extent stated on the record in
court. The parties shall submit a status letter to chambers on or before September 27, 2013. (see transcript). Court
Reporter: Bill Richards (mro) (Entered 08/08/2013).

respondents' position that the "communications to and from those entities are within the circle of the employer for privilege purposes." *Id.* at 39.

The Court should follow its precedent. CSG is, at best, a third party to the communications between a company and its counsel and it has not provided any factual underpinnings supporting its assertions as a de facto employee of the four companies that established ESOPs in 2016 and 2017. Further, CSG has not shown that it had any authority to make decisions for these companies. Accordingly, it has failed to carry its burden showing the functional equivalent doctrine applies. The same result as in *Wilmington Trust* and *Jacobson* is warranted here – the subpoena should be enforced.

**C.      CSG Has Not Met Its Burden to Show the Applicability of the Work Product Doctrine.**

CSG has also invoked the work product doctrine, although it has not even attempted to explain how it applies to the communications being withheld from the Secretary. Herzog Decl., Ex. D at 3. As is well-known, "[t]he work-product rule shields from disclosure materials prepared 'in anticipation of litigation' by a party, or the party's representative, absent a showing of substantial need." *Bloomingburg Jewish Educ. Ctr. v. Vill. of Bloomingburg, New York*, 171 F. Supp. 3d 136, 141 (S.D.N.Y. 2016) (quoting Fed. R. Civ. P. 26(b)(3)). The party claiming work product protection bears the burden of demonstrating that the documents or materials were prepared "in anticipation of litigation." *United States v. Constr. Prods. Research*, 73 F.3d 464, 473 (2d Cir. 1996); *Adlman II*, 134 F.3d 1194, 1202 (2d Cir. 1998); *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 184 (2d Cir. 2007). "The possibility of litigation is insufficient to give rise to work-product protection." *Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*, No. 03-CIV-5560(RMB)(HBP), 2007 WL 473726, at *5 (S.D.N.Y. Feb. 14, 2007). Accordingly, "documents prepared in the ordinary course of business, or that otherwise would

have been prepared absent the prospect of litigation, do not receive work product protection. *Gucci Am., Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 74 (S.D.N.Y. 2010).

Here, CSG has not met its burden to show that the withheld communications qualify for protection under the work product doctrine.  First, CSG has not provided the Secretary with any explanations about how ESOP transactions communications were prepared to assist in any anticipated or ongoing litigation.  Valdez Decl., ¶ 4.  Second, CSG has not produced a privilege log supporting its assertion that the communications at issue qualify for protection under the work product doctrine.  *Id.*  Absent an "adequately detailed privilege log in conjunction with evidentiary submissions to fill in any factual gaps, identifying the parties to the communications and other relevant information," *Constr. Prods. Research*, 73 F.3d at 473 (quoting *Bowne v. New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 474 (S.D.N.Y. 1993)), the court lacks the essential information necessary to determine whether CSG's claim of the work product doctrine is proper.

Because CSG has not produced a privilege log to the Secretary containing the necessary information about the subject communications, it cannot continue to assert this privilege.

**III.     An Order Is Necessary to Prevent a Lapse of the Statute of Limitations.**

ERISA has a six-year period in which a plaintiff, including the Secretary, can bring an action against a plan for a violation of the Act, and a three-year period after a plaintiff, including the Secretary has actual knowledge of a violation.  ERISA § 413, 29 U.S.C. § 1113.  An order to enforce the subpoena is necessary to prevent a lapse of the statute of limitations.  CSG's failure to comply with the administrative subpoena could render a portion of the investigative scope barred by the statute of limitations.  Without an order from this Court compelling CSG's compliance with the subpoena, CSG will be able to continue to impede the Secretary's investigation.

To mitigate the effect of CSG's actions on the investigation, the Secretary respectfully requests that the Court's order requiring compliance with the subpoena also toll the applicable statute of limitations from the date on which CSG failed to comply with the subpoena (November 20, 2020) until it has fully complied with it. *See Wall v. Constr. & Gen. Laborers' Union, Local 230*, 224 F.3d 168, 176 (2d Cir. 2000) (A defendant "may be equitably estopped from asserting the statute of limitations 'in cases where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused [the plaintiff] to delay in bringing his lawsuit.'") (citations omitted).

Because of the long delay occasioned by CSG's intransigence, such tolling is appropriate.

## CONCLUSION

For the foregoing reasons, the Secretary respectfully requests that the Court grant the Secretary's Petition and enter a conforming order.

DATED:     March 16, 2021
          New York, New York

                                      ELENA S. GOLDSTEIN
                                      Deputy Solicitor of Labor

                                      JEFFREY S. ROGOFF
                                      Regional Solicitor

                                      ROLANDO N. VALDEZ
                                      Senior Trial Attorney

                                      U.S. Department of Labor
                                      Attorneys for the Secretary of Labor

17