EXHIBIT D



November 19, 2020 *Confidential – Subject to 5 U.S.C. § 552(b)(4)*

*Via Email*

Thomas Licetti
Employee Benefits Security Administration
33 Whitehall Street
Suite 1200
New York, New York 1004

RE: Argent Trust Company
EBSA Case No.: 30-106171 (48)

Dear Mr. Licetti:

As you know from the more than 25,600 documents that have already been provided to your office in response to the above-referenced investigation and our representation of CSG Partners, LLC ("CSG") in interviews by your office, this firm represents CSG with respect to the subpoena received by CSG on November 6, 2020 (the "Subpoena"). The Subpoena purports to request the production of documents for "[a]ll Companies Listed in Attachment A," including Choate Construction Company ("Choate"), E&M Logistics, Inc. (E&M), Envision Management Holding, Inc. ("Envision"), Highland Homes Holdings, Inc., and W BBQ Holdings, Inc. ("W BBQ"), that are responsive to two requests: "[a]ll of [CSG's] communications concerning or relating to the Transactions;" and "[a]ll of your communications concerning or with the Sellers, both pre- and post-Transaction."

As more fully outlined below, CSG objects to the Subpoena because it exceeds the Department of Labor, Employee Benefits Security Administration's ("EBSA") investigatory authority, is overbroad, unduly burdensome, and vague, and seeks documents protected by the attorney/client privilege and/or work product doctrine. A previously noted, CSG has voluntarily produced over 25,600 documents to the DOL that are responsive to this Subpoena. To the extent compliance is required, CSG has already done so. Nonetheless, in response to the Subpoena, CSG will produce responsive, non-privileged documents related to the E&M transaction modification that were created from March 12, 2019 to November 6, 2020.

**A. No Documents Exist Related to Highland Homes Holdings, Inc.**

As an initial matter, the Subpoena seeks documents related to an employee stock ownership plan ("ESOP") transaction involving Highland Homes Holdings, Inc. CSG was not involved in any ESOP transaction involving Highland Homes Holdings, Inc., nor has the EBSA ever sent a request for documents for any documents CSG may have with respect to Highland Homes Holdings, Inc.

Melanie.Lazor@ThompsonHine.com Fax: 513.241.4771 Phone: 513.352.6554





It appears the inclusion of this entity in the Subpoena was merely a careless oversight on the part of the EBSA. CSG will not look for any documents responsive to that portion of the Subpoena because, quite simply, none exist.

**B. The Department's Subpoena Exceeds the Authority Set Forth in ERISA Section 504 and is Egregiously Overbroad, Unduly Burdensome, and Vague.**

The Subpoena also seeks access to documents that significantly exceeds the authority given to the EBSA to investigate ESOP transactions. The EBSA's authority extends only to investigate whether a person "has violated or is about to violate" the Employee Retirement Income Security Act of 1974 ("ERISA"). 29 U.S.C. §1132(a)(1). The EBSA simply does not have plenary authority to investigate all communications or actions taken by an investment bank before and after an ERISA transaction that are not relevant to whether any person has violated or is about to violate ERSIA.

Despite the clear limits of the EBSA in its investigations, the Subpoena purports to require production of documents that fall outside this authority. For example, the Subpoena requests ***all*** CSG "communications concerning or relating to the Transactions" and ***all*** CSG "communications concerning or with the Sellers, both pre- and post-Transaction," regardless of whether these communications relate to whether any person has violated or is about to violate ERISA. Indeed, taking these requests literally, the EBSA apparently seeks any possible document between CSG and any of the sellers on any possible topic, which could include anything from the discussion of weather or politics, or even any communication where CSG references one of the sellers in passing. Such communications certainly fall outside of the EBSA's investigatory authority, and therefore the Subpoena is improper on that basis.

For similar reasons, the Subpoena is egregiously overbroad. It seems the EBSA took no effort whatsoever to tailor the Subpoena to only require production of documents relevant to the scope of the EBSA's investigation. Rather, the EBSA apparently decided to cast a broad net to require CSG to produce large swaths of documents, regardless of whether they are relevant to the scope of the investigation, to go on a fishing expedition to identify perceived wrongdoing outside the lawful scope of the EBSA's investigation. This is entirely improper. The bottom line is that only documents related to whether a person violated or is about to violate ERISA are relevant to the EBSA and subject to its subpoena power. The EBSA does not get free reign over CSG's business unrelated to whether a person violated or is about to violate ERISA.

Further, this Subpoena is unduly burdensome because it does not make the slightest attempt to identify what the EBSA is looking for or account for what has already been provided to the EBSA by CSG. Because the Subpoena lacks any specificity as to topics, it puts the entire burden of





identifying and reviewing potentially relevant categories of documents on CSG. This lack of focus amounts to an unduly burdensome request for a review of every business file of CSG. In addition, the Subpoena fails to recognize the significant efforts that have already been voluntarily taken by CSG to respond to requests of the EBSA in connection with this investigation. As previously noted, and as is more clearly detailed herein, CSG has already reviewed tens of thousands of documents and voluntarily produced over 25,600 documents to the EBSA. This is in addition to CSG representatives volunteering to participate in multiple exhaustive interviews with EBSA relating to the above matters over the course of more than 16 hours. There is simply nothing left to produce. But, regardless of that fact, EBSA refused to tailor this Subpoena to limit it to relevant previously unproduced documents. To the extent the EBSA desires that CSG re-do this time consuming and expensive process, this Subpoena imposes an undue burden on that basis as well.

Finally, the Subpoena is vague because it inadequately defines what documents the EBSA seeks and fails to define the custodians subject to the Subpoena. For example, the Subpoena purports to seek documents from CSG “affiliates.” “Affiliates” is not defined in the Subpoena, leaving CSG unable to determine whose documents it must produce to comply.

**C. CSG Cannot, and Will Not, Produce Documents Protected by Each Company’s Attorney-Client Privilege.**

CSG also objects to the Subpoena because it seeks documents protected by the attorney-client privilege and/or work product doctrine. Although CSG is not claiming the attorney/client privilege on its own behalf, CSG is subject to confidentiality obligations in its agreements with these companies that require CSG to protect each company’s attorney/client communications. To disclose these communications, CSG needs consent from the companies. Because these companies have not consented to the disclosure of the communications protected by the attorney/client privilege, CSG cannot produce them.

Given the email exchanges between my office and Michael Hartman, as well as my conversations with Carol Herzog, it is clear the EBSA believes it is entitled to communications between each company and their attorneys because the functional equivalent doctrine does not apply. This is incorrect.

The attorney/client privilege applies to communications between a company’s counsel and an independent contractor who acts as the functional equivalent of an employee. *See In re Bieter Co.*, 16 F.3d 929, 939-40 (8th Cir. 1994). In *Bieter*, for example, a partnership worked closely with an independent contractor to develop a parcel of land. *Id*. at 933. In connection with that task, the independent contractor was involved extensively with the partnership's attorneys, receiving and





sending communications directly with them regarding the failure to develop the property and the litigation related to that failure. *Id*. at 934. The court found that for purposes of the attorney/client privilege analysis, "[the independent contractor] was in all relevant respects the functional equivalent of an employee [for the purpose of applying the attorney-client privilege]." *Id*. at 938 (citing *McCaugherty v. Siffermann*, 132 F.R.D. 234, 239 (N.D. Cal. 1990)).

Like in *Bieter*, there is no doubt that CSG was the functional equivalent of an employee for purposes of the attorney/client privilege because CSG was an essential part of each company's ESOP transaction legal team. CSG worked jointly with each company and their counsel in the ESOP transaction and provided them with necessary information to negotiate these transactions. CSG also requested and received legal advice from each company's counsel and was involved in day-to-day matters regarding the transaction negotiations. As such, CSG's communications with each company's counsel and/or the company regarding legal advice in connection with these ESOP transactions are clearly privileged. *See, e.g., In re Flonase Antitrust Litig.*, 879 F. Supp. 2d 454, 460 (E.D. Pa. 2012*)* (privilege applied to confidential communications with independent consultant that was intimately involved with company and played a crucial role in legal and regulatory matters); *see, e.g., U.S. ex rel. Strom v. Scios, Inc.*, No. C05–3004, 2011 WL 4831193, at *4 (N.D.Cal. Oct. 12, 2011) ("[T]he dispositive question is the consultant's relationship to the company and whether by virtue of that relationship he possesses information about the company that would assist the company's attorneys in rendering legal advice."); *Stafford Trading, Inc. v. Lovely,* No. 05–4868, 2007 WL 611252, at *7 (N.D.Ill. Feb. 22, 2007) ("The Court adopts this balanced approach ..., limiting the privilege to those instances where ... [the independent consultant] confidentially communicated with ... counsel for the purpose of obtaining or providing legal advice.").

Although unnecessary because CSG was under no legal duty to do so, in an effort to be completely transparent with the EBSA, CSG provided the EBSA with comprehensive privilege logs that specifically identified each and every document withheld on the basis of privilege. CSG has also diligently communicated the EBSA's privilege challenges to the subject companies to determine whether the companies intended to continue to assert privilege over the challenged documents. After coordinating these responses, CSG even provided the EBSA with three supplemental productions of documents and supplemental privilege logs.

CSG is not being evasive in refusing to produce the privileged documents. CSG simply cannot produce documents protected by these companies' attorney/client privilege merely because the EBSA believes it is entitled to them.





**D. CSG Has Already Voluntarily Produced Over 25,600 Documents That Are Responsive to the Subpoena and Participated in 16 Hours of Interviews by EBSA.**

Perhaps most the most egregious part of this Subpoena is the fact that it is entirely unnecessary given CSG's extensive voluntary compliance with the EBSA's requests for documents. CSG already voluntarily produced 25,613 documents in response to the EBSA's February 19, 2019 request for documents related to CSG's work on the Choate, E&M, Envision, and W BBQ ESOP transactions. Specifically, CSG produced 6,749 documents related to the Choate ESOP transaction, 8,068 documents related to the E&M ESOP transaction, 3,542 documents related to the Envision ESOP transaction, and 7,254 documents related to the W BBQ ESOP transaction. This is in addition to CSG representatives repeatedly *volunteering* to participate in over 16 hours of exhaustive interviews with EBSA, despite the confrontational and prosecutorial tone taken by the EBSA personnel in these interviews.

Quite frankly, CSG has been more than cooperative with the EBSA in voluntarily producing essentially every non-privileged document it has in its possession, custody, or control related to these companies, regardless of whether they fell within the EBSA's investigative authority or not, that were created through March 12, 2019, the date that CSG pulled the documents for review from its email archive.

CSG has done no work within the EBSA's investigative authority with respect to Choate, Envision, and W BBQ ESOP transactions since March 12, 2019. As such, no additional non-privileged, responsive documents exist. CSG has therefore already fully complied with the Subpoena with respect to those entities.

The only documents that have not been provided to the EBSA that remotely fall within the EBSA's authority are those relating to E&M's transaction modification that closed in 2019. Notably, however, CSG already produced documents related to the E&M transaction modification that were created prior to March 12, 2019. The only reason documents created after that date were not provided is because the EBSA failed to issue a request for documents that covers the time period from February 19, 2029 until November 6, 2020. Subject to the objections raised in this letter, CSG will nonetheless search for and produce documents related to the E&M transaction modification created after March 12, 2019 by **December 18, 2020.**

CSG believes this letter should resolve any lingering disputes related to these documents. Please contact me if you have any questions.





Very truly yours,

Melanie M. Lazor

cc: David Whaley
Brian Lamb
Carol Herzog