UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- X
Milton Al Stewart, Acting Secretary of          :
Labor, United States Department of Labor,        :      Case No. 1:21-mc-00345-GHW
                                                 :
                    Petitioner,                  :
                                                 :
         -against-                               :      Date:        April 16, 2021
                                                 :
CSG Partners, LLC,                               :
                                                 :
                    Respondent.                  :
                                                 X
------------------------------------------------

### MEMORANDUM OF LAW IN OPPOSITION TO PETITION TO ENFORCE ADMINISTRATIVE SUBPOENA *DUCES TECUM*

**THOMPSON HINE LLP**
Emily J. Mathieu
Emily.Mathieu@ThompsonHine.com
335 Madison Avenue
12th Floor
New York, NY  10017
Telephone:  212.344.5680
Facsimile:  212.344.6101

Melanie M. Lazor (*pro hac vice*)
Melanie.Lazor@ThompsonHine.com
312 Walnut Street, Suite 2000
Cincinnati, Ohio 45202
Telephone: 513.352.6554
Facsimile: 513.241.4771

*Attorneys for Respondent CSG Partners, LLC*

**TABLE OF CONTENTS**

TABLE OF CONTENTS .................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

I.      INTRODUCTION ................................................................................................. 1

II.     CORRECTIONS OF MISSTATEMENTS OF FACT ................................... 2

III.    STATEMENT OF FACTS ................................................................................. 4

      a.    Respondent Assists Four Companies to Close ESOP Transactions. ................... 4

      b.    Respondent Receives a Request for Production of Documents and Provides Over 25,000 Documents to the EBSA. ................................................................. 6

      c.    Respondent and the EBSA Negotiate Regarding Documents Withheld Based on the Companies' Attorney-Client Privilege............................................................ 7

      d.    Respondent Receives a Subpoena and Produces Additional Documents. ........... 9

IV.    ARGUMENT.................................................................................................... 10

      a.    The Information Sought is Already Within the EBSA Possession.................... 11

      b.    The EBSA is Not Entitled to Additional Documents from Respondent............ 12

            i.    Respondent Withheld and Properly Logged Privileged Documents. .... 13

                 1.    Respondent Was a Necessary Party for the Companies to Obtain Informed Legal Advice. ........................................................... 14

                 2.    Respondent was a *de facto* employee under the functional equivalent doctrine.................................................................. 15

                 3.    The Authority cited to by the EBSA is Inconsistent with *Upjohn* and Unpersuasive. ......................................................... 17

            ii.    Any Communications Concerning or with the Sellers Not Already Produced Are Not Relevant to the EBSA's Investigatory Authority. ... 18

      c.    The Secretary is Not Entitled to Tolling of the Statute of Limitations. ............. 21

V.     CONCLUSION................................................................................................. 23

CERTIFICATE OF SERVICE ...................................................................................... 25

4849-3476-4261

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta v. Wilmington Trust, N.A.*,
No. 17-CV-6325 (VSB) (KNF), 2019 U.S. Dist. LEXIS 16632
(S.D.N.Y. Feb. 1, 2019) ......................................................................................................18, 19

*Adamowicz v. United States*,
531 F.3d 151 (2d Cir. 2008) ....................................................................................................12

*In re Bieter Co.*,
16 F.3d 929 (8th Cir. 1994) .....................................................................................................16

*Calvin Klein Trademark Trust v. Wachner*,
124 F. Supp. 2d 207 (S.D.N.Y. 2000) ..............................................................................14, 15

*Crouse-House Co. v. InterNorth, Inc.*,
634 F.2d 690 (2d Cir. 1980) ....................................................................................................22

*CSC Recovery Corp. v. Daido Steel Co.*,
No. 94 Civ. 9214 (LAP) (THK), 1995 U.S. Dist. LEXIS 7752
(S.D.N.Y. June 7, 1995) ...........................................................................................................17

*Ex.-Imp. Bank of the United States v. Asia Pulp & Paper Co.*,
232 F.R.D. 103 (S.D.N.Y. 2005) .............................................................................................17

*In re Flonase Antitrust Litig.*,
879 F. Supp. 2d 454 (E.D. Pa. 2012*)* ....................................................................................16

*Guo v. IBM 401(k) Plus Plan*,
No. 13-CV-8223 (KMK), 2016 U.S. Dist. LEXIS 126360
(S.D.N.Y Sept. 15, 2016) ...................................................................................................22, 23

*Harris v. Jacobson*,
No. 13-MC-213 (JPO) (S.D.N.Y. Aug. 6, 2013) ....................................................................18

*McVane v. FDIC (In re McVane)*,
44 F.3d 1127 (2d Cir. 1995) ....................................................................................................21

*NLRB v. Am. Med. Response, Inc.*,
438 F.3d 188 (2d. Cir. 2006) ..............................................................................................19, 21

*Perez v. La Health Servs. & Indem. Co.*,
No. 15-mc-61-BAJ-RLB, 2015 U.S. Dist. LEXIS 122636
(M.D. La. Sept. 15, 2015) ........................................................................................................22

ii

*RNR Enters. v. SEC*,
    122 F.3d 93 (2d Cir. 1997)............................................................................11, 19

*Ross v. UKI Ltd.*,
    No. 02 Civ. 9297 (WHP) (JCF), 2004 U.S. Dist. LEXIS 483
    (S.D.N.Y. Jan. 15, 2004)..................................................................14, 17, 18

*Scheffler v. United States*,
    806 F.3d 34 (2d Cir. 2015)............................................................................13, 14

*SEC v. Bradoon Scotch Distributing Co.*,
    480 F.2d 1047 (2d Cir. 1973)............................................................................11

*Stafford Trading, Inc. v. Lovely*,
    No. 05–4868, 2007 WL 611252 (N.D. Ill. Feb. 22, 2007) ...................................16

*States v. Powell*,
    379 U.S. 48 (1964)............................................................................19

*U.S. ex rel. Strom v. Scios, Inc.*,
    No. C05–3004, 2011 WL 4831193 (N.D. Cal. Oct. 12, 2011) ...............................16

*Twentieth Century Fox Film Corp. v. Marvel Enters.*,
    No. 01 Civ. 3016 (AGS)(HBP), 2002 U.S. Dist. LEXIS 22215
    (S.D.N.Y. Nov. 15, 2002)............................................................................16, 18

*United States v. Enable Healthcare, Inc.*,
    No. 20 Misc. 21 (ER), 2021 U.S. Dist. LEXIS 42777 (S.D.N.Y. Mar. 8, 2021)....................11

*United States v. Kovel*,
    296 F.2d 918 (2d Cir. 1961)............................................................................13, 14

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981)............................................................................13, 18

*Viacom, Inc. v. Sumitomo Corp. (In re Copper Mkt. Antitrust Litig.)*,
    200 F.R.D. 213 (S.D.N.Y. 2001) ............................................................................16

**Statutes**

28 U.S.C. § 1746............................................................................2, 3

29 U.S.C. § 1134(a)(1)............................................................................19, 20

Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.* ........................1, 19, 20, 21

**Other Authorities**

Employee Benefits Security Administration Enforcement Manual,
        https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/enforcement/oe-
        manual-full (last visited Apr. 15, 2021)......................................................................12

## I.   INTRODUCTION

The Employee Benefits Security Administration ("EBSA"), represented in this action by Petitioner Milton Al Stewart, Acting Secretary of Labor, United States Department of Labor (the "Secretary"), provided the Court multiple factual misstatements to support enforcing an administrative subpoena against Respondent CSG Partners, LLC ("Respondent"), an investment bank that is not the subject of the EBSA investigation. Although Respondent provided the EBSA with over 26,000 documents responsive to the subpoena, the Secretary relies on an incorrect statement of facts to obtain documents subject to attorney-client privilege claimed by Respondents' clients, as well as documents that fall outside the EBSA's investigative authority because they are not relevant to whether a party violated the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"). The Petition should be denied.

In 2019, the EBSA served a voluntary request for documents on Respondent, an investment bank specializing in advising companies on becoming employee-owned using an employee stock ownership plan ("ESOP"). The request related to ESOP transactions ("Transactions") involving four clients of Respondent: Dallas BBQ ("BBQ"), Choate Construction Company ("Choate"), Calip Holdings, Inc. and E&M Ice Cream Inc. (collectively "E&M"), and Envision Management LLC ("Envision") (BBQ, Choate, E&M, and Envision are each a "Company" and together are "Companies"). In response, Respondent produced over 26,000 documents and provided the EBSA with detailed privilege logs for each Transaction identifying the documents withheld as subject to attorney-client privilege claimed by the Companies. Despite this compliance, the EBSA served Respondent with a subpoena seeking these privileged documents and documents unrelated to the Transactions or any ERISA-governed plan that are clearly outside the EBSA's investigatory authority. Respondent timely objected.

1

Although the Secretary frames this dispute as willful noncompliance on the part of Respondent, that is far from the truth. Instead of simply challenging Respondent's invocation of attorney-client privilege on behalf of the Companies and objection to providing documents outside the EBSA's investigative authority—which appears to be the subject of a *bona fide* dispute between the parties—the Secretary presented a factually inaccurate recitation of what occurred. This risks misleading this Court into believing that Respondent has not complied with the Subpoena in order to obtain documents to which the EBSA is not entitled. Because (a) Respondent complied with the Subpoena and provided detailed privilege logs to the EBSA, (b) the withheld documents are protected by the Companies' attorney-client privilege, and (c) any remaining documents fall outside the EBSA's investigative authority, the Petition should be denied.

## II.    CORRECTIONS OF MISSTATEMENTS OF FACT

The Secretary's Memorandum of Law [Doc. 5] ("Memorandum") and accompanying declarations contain multiple misstatements of fact material to the Court's analysis. These facts must be explicitly corrected for this Court:

- The Secretary stated that "[o]n November 19, 2020, EBSA received a letter from Respondent's counsel, in which Respondent objected to the subpoena in whole," and "[i]n all this time *[Respondent] also has not produced a single document in response to the subpoena*." Memorandum at 4-5 (emphasis added). Similar false statements were also contained within the declaration made by an EBSA investigator pursuant to 28 U.S.C. § 1746. For example, the declaration stated that "EBSA is not in possession of the information sought in the subpoena;" that Respondent "declin[ed] to produce the requested documents" and that "[Respondent] has not produced the requested documents or complied with the EBSA's subpoena in any way." Declaration of Carol Herzog ("Herzog Decl.") ¶¶ 15, 17 [Doc. 6].

  - **As of November 3, 2020, three days before the Subpoena was issued, Respondent had produced 25,612 documents to the EBSA in response to the EBSA's voluntary request for documents. Declaration of Melanie M. Lazor ("Lazor Decl.") ¶ 18.**

  - **In Respondent's objection letter to the Subpoena ("Objection Letter"), Respondent specifically directed the EBSA to the documents and privilege logs already produced in response to the voluntary requests for information as**

responsive to the Subpoena, stating that "[Respondent] has voluntarily produced over 25,600 documents to the DOL that are responsive to this Subpoena. To the extent compliance is required, [Respondent] has already done so." Objection Letter at 1 [Doc. 6-4]. This represented all documents that were created "through March 12, 2019, the date that [Respondent] pulled the documents for review from its email archive." *Id.*; Lazor Decl. ¶ 20.

- Respondent further confirmed that it had "done no work within the EBSA's investigative authority with respect to Choate, Envision, and W BBQ ESOP transaction[s] since March 12, 2019," and therefore "no additional non-privileged, responsive documents exist." Objection Letter at 5. Respondent also agreed to produce non-privileged, responsive documents related to a post-closing reduction in the Transaction purchase price involving E&M ("E&M Price Reduction") that were created after March 12, 2019. Objection Letter at 5 Lazor Decl. ¶ 20.

- On December 18, 2020, Respondent produced 795 documents related to the E&M Price Reduction, as well as a supplemental privilege log, specifically in response to the Subpoena. Lazor Decl. ¶ 22, Ex. I.

• The Secretary further falsely stated that Respondent has not produced privilege logs: "In fact, the Secretary does not know how many thousands of documents [Respondent] has withheld because [Respondent] has not produced privilege logs, as required by the subpoena, Herzog Decl., Ex. C at 5-6, but has simply objected to the requests as a class." Memorandum at 9. This was echoed in the EBSA's investigator's declaration, which stated that Respondent "did not provide EBSA with a privilege log." Herzog Decl. ¶ 16.

- On April 5, 2019, Respondent produced four privilege logs for its production of documents—one for each Transaction being investigated by the EBSA. Lazor Decl. ¶ 6, Ex. A.

- On September 23, 2020, Respondent produced a supplemental privilege log relating to Respondent's Envision document production. *Id.* ¶ 15, Ex. G. This log updated the one produced on April 5, 2019 to reflect which previously withheld documents were produced to the EBSA on September 23, 2020. *Id.*

- On November 3, 2020, Respondent produced supplemental privilege logs for the Choate and E&M productions. *Id.* ¶ 16, Ex. H. These logs updated the ones produced on April 5, 2019 to reflect which previously withheld documents were produced to the EBSA on November 3, 2020. *Id.*

- On December 18, 2020, Respondent produced a supplemental privilege log for the E&M production. *Id.* ¶ 22, Ex. I. This log updated the privilege log provided on November 3, 2020 to include privileged documents withheld from the supplemental production made to the EBSA on December 18, 2020 relating to the E&M Price Reduction. *Id.*

3

- The Secretary further misleadingly states that Respondent refused to discuss the privilege claimed on behalf of the Respondent's clients. For example, the Secretary states that "[Respondent] continued to withhold a significant number of critical documents under the aforementioned broad assertions of attorney-client privilege, which it refused to expand upon" and that "[Respondent's] counsel also rejected the Secretary's request to discuss the issues" in a meet-and-confer call. Memorandum at 3-4.

    - **Respondent and the EBSA participated in a phone call on April 2, 2020 to discuss the privileges claimed by Respondent where Respondent explained it was a necessary advisor to each Company and its counsel and therefore communications between the Company's counsel and Respondent did not waive privilege. Lazor Decl. ¶ 10.**

    - **Respondent's counsel never refused to engage in meet and confer communications regarding the claims of privilege. The email from which the Secretary selectively quotes actually states that:"[w]e are happy to have a phone call to discuss [the privilege dispute], but, as [Respondent] is leaving the final determination as to whether to treat these documents as privileged with the company, we do not believe it will be particularly fruitful at this stage." Lazor Decl. ¶ 14, Ex. G. The EBSA never proposed a time to discuss and continued to insist Respondent refused to discuss. *Id.* ¶ 14.**

Respondent is genuinely surprised by the Secretary's efforts to mislead the Court about the facts and Respondent's fulsome production of documents and related privilege logs. Despite an obligation to ensure the factual contentions made in the Petition have evidentiary support, many of the factual contentions the Secretary has presented to the Court are simply false.

## III.    STATEMENT OF FACTS

### a.    Respondent Assists Four Companies to Close ESOP Transactions.

Respondent is an investment bank that assists companies nationwide with becoming employee-owned through the use of an ESOP, including advising on the structuring of transactions, obtaining financing, and assisting with closing. Declaration of Lawrence Kaplan ("Kaplan Decl.") ¶ 4.  Because most companies contemplating an ESOP lack the necessary expertise to structure and close these transactions—which involve complex corporate, tax, benefits, and financing issues—Respondent acts as an essential advisor to the companies and their

4849-3476-4261

attorneys to assist with the process. *Id.* ¶ 5. This process requires communication with the company's counsel to ensure that the interests of the company are reflected in documenting the terms of the corporate reorganization, financing, and ESOP transaction documents. *Id.* ¶ 6.

The Subpoena relates to four companies that Respondent assisted with ESOP transactions in 2016 and 2017: BBQ, Choate, E&M, and Envision.[1] *Id.* ¶ 7. As part of these engagements, Respondent agreed to keep the Companies' information confidential. *Id.* ¶ 10. Respondent further provided expertise that neither the Company, nor their counsel, could, which was necessary for the Company's counsel to provide informed legal advice. *Id.* ¶ 11. For example, Respondent provided the Companies and their counsel with information necessary to negotiate the terms of the Transaction, and to document corporate and tax matters, Transaction debt financing, acquisition of stock by the ESOP, and numerous related documentation. *Id.* ¶ 12. Without Respondent's ability to confidentially communicate information to the Companies' counsel, counsel would not have been able to provide informed legal advice to the Companies. *Id.*

Respondent was also an essential part of each Company's ESOP team and worked jointly with each Company and their counsel throughout each Transaction. *Id.* ¶ 13. For each of the Transactions, Respondent competitively solicited bank financing to fund the Transaction, modeled the terms of repayment for the Company to ensure it could sustainably repay the debt, prepared detailed tax and cash flow models for the Company reflecting the Transaction structure, coordinated due diligence matters with all Transaction parties, and advised the Company on the Transaction process. *Id.* To Respondent's knowledge, no employees at the Companies possessed

---

[1] The Subpoena also requests documents related to the Highland Homes Holdings, Inc. ("Highland Homes") ESOP transaction. Subpoena at 3 [Doc. 6-3]. Respondent had no involvement with that transaction. Kaplan Decl. ¶ 8. Counsel for Respondent advised the EBSA of this on November 19, 2020. Objection Letter at 1-2.

Respondent's knowledge regarding these ESOP matters. *Id.* ¶ 14. If this work were not performed by Respondent, however, it would need to be performed by the Company's employees who generally cannot do so because they already have other responsibilities operating the Company and cannot also manage a highly complex corporate, tax, and financing process. *Id.* ¶ 15.

The E&M Transaction closed on May 26, 2016, the BBQ Transaction closed on July 29, 2016, the Choate Transaction closed on December 13, 2016, the Envision Transaction closed on December 19, 2017. *Id.* ¶ 18.

      **b.  Respondent Receives a Request for Production of Documents and Provides Over 25,000 Documents to the EBSA.**

On February 19, 2019, the EBSA sent Respondent a voluntary request for documents ("Request for Documents") relating to the Transactions. Request for Documents [Doc. 6-1]. Respondent interpreted the requests broadly and searched the email archives of each person at Respondent who worked on the respective Transaction from January 1, 2014, until the date the emails were collected in March 2019 for specific, broad search terms in order to identify and produce all documents that related to the Transactions. Lazor Decl. ¶ 3.

Respondent timely and voluntarily produced documents related to all four Transactions on April 5, 2019: 8,029 documents related to the E&M Transaction, 3,496 documents related to the Envision Transaction, 6,725 documents related to the Choate transaction, and 7,254 documents related to the W BBQ transaction. *Id.* ¶¶ 4-5, Ex. A. Because Respondent was a necessary party and *de facto* employee on several privileged communications between each Company and their attorney, Respondent withheld certain documents based on each Company claiming attorney-client privilege.[2] *Id.* ¶ 6. On April 5, 2019, Respondent also provided four privilege logs for

---

[2] Respondent also withheld a small number of privileged documents based on its own attorney-client privilege. Lazor Decl. ¶ 6.

withheld documents that identified the date the document was created, the author of the document, the recipient of the document, a description of the contents of the document, whether the document was withheld or redacted, and the privilege claimed over the document. *Id.* ¶¶ 67, Exs. B-E.[3]

###   c.   Respondent and the EBSA Negotiate Regarding Documents Withheld Based on the Companies' Attorney-Client Privilege.

Respondent heard nothing from the EBSA about its production of documents for ten months. *Id.* ¶ 8.  Then, on February 13, 2020, an investigator at the EBSA contacted Respondent directly, despite knowing that Respondent was represented by counsel, to discuss the documents withheld from the April 5, 2019 production as privileged. *Id.* On March 20, 2020, counsel for Respondent re-circulated its original privilege logs to facilitate discussion and informed the EBSA by email that the privilege claimed in the logs was that of the individual Companies. *Id.* ¶ 9, Ex. F. On April 2, 2020, counsel for Respondent explained to the EBSA during a phone call that Respondent had claimed privilege on behalf of each Company as a necessary advisor to the client in these communications. *Id.* ¶ 10.

On August 21, 2020, the EBSA informed Respondent that the ESBA did not believe that Respondent established it was the functional equivalent of an employee, and that therefore Respondent's presence on emails with counsel waived the Companies' attorney-client privilege. *Id.* ¶ 11, Ex. G.  The EBSA also provided a short, specific list of documents for which the EBSA challenged the privilege designation.  *Id.* Respondent provided this list to the Companies so that they could review the listed documents to determine whether they intended to continue to claim

---

[3] To ease the burden on the Court, Respondent is providing only the most recent version of the privilege log for each Transaction. The prior versions of the privilege logs were in the same format and had the same level of detail. The updates merely identify the bates number and production status of documents that were subsequently produced. Respondent will file the remaining privilege logs with the Court upon request.

privilege. *Id.* ¶ 12.  On August 28, 2020, however, the EBSA informed Respondent that "the documents [previously] highlighted are just examples of one of the broad issues that we identified with [Respondent's] claims or privileges," greatly expanding the scope of the Companies' review. *Id.* ¶ 13, Ex. G. In emails exchanged in September 2020, Respondent explained to the EBSA that Respondent was waiting for the Companies to determine whether they would instruct Respondent to continue to withhold the documents identified by the EBSA, and that Respondent did not believe a meet-and-confer conference could be particularly fruitful before that process was complete. *Id.* ¶ 14, Ex. G. Respondent nonetheless offered to participate in a conference and continued to engage in email correspondence with the EBSA. *Id.*

On September 23, 2020, after receiving authorization from Envision, Respondent produced 46 additional documents and supplemented its privilege log to identify which documents were no longer being withheld as privileged. *Id.* ¶ 15, Ex. G. Similarly, on November 3, 2020, after receiving authorization from E&M and Choate, Respondent provided the EBSA with a supplemental production of 38 documents related to the E&M Transaction and 24 documents related to the Choate Transaction, along with supplemental privilege logs identifying which documents were no longer being withheld as privileged. *Id.* ¶ 16, Ex. H. As of November 3, 2020, E&M, Choate, and Envision had informed Respondent that they generally viewed communications involving Respondent and the Company's attorneys as privileged and did not authorize Respondent to produce any other additional documents. *Id.* ¶ 17. By this time, Respondent had produced 25,612 documents to the EBSA related to the four Transactions, provided four privilege logs and three supplements to keep the privilege logs current after supplemental productions, and completed several voluntary interviews relating to the Transactions totaling almost 16 hours of Respondent's time. *Id.* ¶ 18.

**d.   Respondent Receives a Subpoena and Produces Additional Documents.**

Even though Respondent had produced over 25,000 documents related to the Transactions, on November 6, 2020, the EBSA served the Subpoena on Respondent broadly requesting "[a]ll of your communications concerning or relating to [each] Transaction," and "[a]ll of your communications concerning or with the Sellers, both pre- and post-Transaction." Subpoena at 7.

On November 19, 2020, Respondent timely served its responses and objections to the Subpoena. *See* Objection Letter. In its response, Respondent directed the EBSA to the 25,612 responsive documents and the seven privilege logs it had previously produced by Respondent. Objection Letter at 1, 5. Respondent also agreed to produce additional documents relating to the E&M Price Reduction that was ongoing at the time that Respondent collected documents for its response to the Request for Information. *Id.* at 5. Respondent's objection also outlined why it could not produce the material withheld as privileged without each Company's consent, and why the information sought exceeded the EBSA's investigatory authority. *Id.* at 2-4. Respondent further confirmed that it had "done no work within the EBSA's investigative authority with respect to Choate, Envision, and W BBQ ESOP transaction[s] since March 12, 2019," and therefore "no additional non-privileged, responsive documents exist." Objection Letter at 5; Kaplan Dec. ¶ 19. Respondent timely produced an additional 795 documents related to the E&M Price Reduction, along with a supplemental privilege log, on December 18, 2020. Lazor Decl. ¶ 22, Ex. I.

From December 18, 2020 until the Secretary filed this petition, the EBSA made no effort whatsoever to contact Respondent regarding its Objection Letter, nor to meet and confer regarding the disputes or identify any documents it specifically challenged as not privileged. *Id.* ¶ 23.

The Secretary filed this Petition on March 16, 2021. *Id.* On March 17, 2021, Respondent learned for the first time that Envision had produced communications with its attorney involving Respondent four to six weeks prior. *Id.* ¶ 25. Neither the EBSA, nor Envision, informed

9

Respondent of this before the filing of the Petition. *Id.* After Envision authorized Respondent to produce documents that were withheld based on Envision's attorney-client privilege, Respondent produced 743 documents on April 16, 2021, along with a ninth supplemental privilege log. *Id.* ¶ 26, Ex. J.

Respondent further conferred with counsel for BBQ, Choate, and E&M. *Id.* ¶ 24. After reviewing the documents withheld as privileged, Choate authorized the production of 450 documents previously withheld as privileged, which Respondent produced on April 16, 2021 with a tenth supplemental privilege log. *Id.* ¶ 27, Ex. J.  Choate further advised that it believes the remaining documents withheld based on Choate's attorney-client privilege are privileged communications seeking or providing legal advice and instructed Respondent to continue to withhold the documents. *Id.* ¶ 28. Respondent understands that Choate informed the EBSA directly of this review and supplemental production. *Id.* ¶ 27.

Respondent also provided E&M with the documents withheld based on E&M's attorney-client privilege. *Id.* ¶ 29. Early on April 16, 2021, E&M provided Respondent with a list of approximately 574 documents that Respondent could produce to the EBSA. *Id.* Respondent was not able to process that production and update the privilege log prior to this filing but notified the EBSA it will do so the week of April 19, 2021.[4] *Id.* ¶ 29, Ex. J. BBQ advised Respondent to continue to withhold documents based on BBQ's attorney-client privilege. *Id.* ¶ 30.

## IV.   ARGUMENT

To enforce an administrative subpoena, the Secretary must demonstrate "[1] that the investigation will be conducted pursuant to a legitimate purpose, [2] that the inquiry may be relevant to the purpose, [3] that the information sought is not already within the [Secretary's]

---

[4] Respondent will file the forthcoming supplemental privilege log related to the E&M Transaction upon the Court's request.

possession, and [4] that the administrative steps required . . . have been followed." *RNR Enters. v. SEC*, 122 F.3d 93, 96 (2d Cir. 1997). If those requirements are shown, Respondent must show "the subpoena is 'unreasonable' or was issued in bad faith or for an 'improper purpose,' or that compliance would be *unnecessarily* burdensome.'" *Id.* at 97. Where an enforcement action is nothing more than an effort to harass or pressure the subpoenaed party, this Court should refuse to enforce the subpoena. *SEC v. Bradoon Scotch Distributing Co.*, 480 F.2d 1047, 1056 (2d Cir. 1973).

### a.  The Information Sought is Already Within the EBSA Possession.

The Secretary falsely argues that Respondent failed to comply with the Subpoena in any way. The Petition must be denied to the extent it seeks documents already within the EBSA's possession. For this Court to enforce the Subpoena, the Secretary must demonstrate that "the information sought is not already within the [EBSA's] possession." *United States v. Enable Healthcare, Inc.*, No. 20 Misc. 21 (ER), 2021 U.S. Dist. LEXIS 42777, at *4 (S.D.N.Y. Mar. 8, 2021). Prior to the filing of the Petition, Respondent already produced over 26,000 documents responsive to the Subpoena (and provided detailed privilege logs for each Transaction). Lazor Decl. ¶¶ 18, 22, Exs. A-E, G-I. Due to the breadth of the search conducted by Respondent, except for the documents withheld based on the Companies' attorney-client privilege, all responsive documents to the Subpoena and within the EBSA's investigative authority have been produced. *Id.* ¶ 3. Thus, this is exactly the type of case where "the bulk of the information requested" in the Subpoena is "already in possession of the" federal agency. *See Adamowicz v. United States*, 531 F.3d 151, 159 (2d Cir. 2008).

The Secretary has taken the puzzling position that Respondent has not complied with the Subpoena because these documents were produced in response to the Request for Information and not the Subpoena. Memorandum at 9. However, the EBSA's own enforcement manual states that

11

a voluntary request for information is the preferred means to obtain documents for its investigations.   *See* Employee Benefits Security Administration Enforcement Manual, https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/enforcement/oe-manual-full   (last visited Apr. 15, 2021) ("Generally, EBSA seeks to obtain documents through voluntary production of records."). Thus, Respondent's production of documents in response to the Request for Documents is an accepted, even preferred, means of providing the requested documents.

In case there were any doubt whether the responsive documents in Respondent's possession were already provided to the EBSA, Respondent explicitly and repeatedly directed the EBSA to those documents in its Objection Letter. Objection Letter at 1, 3, 5.   Requiring Respondent to produce these documents again for no reason other than that the EBSA issuing a subpoena requesting the same information would impose a significant, unnecessary, and undue burden on Respondent while needlessly elevating form over substance.

Even if the Secretary were correct that identifying these documents as responsive to the Subpoena is not compliance with the Subpoena, it is still patently false that "[i]n all this time [Respondent] also has not produced a single document in response to the subpoena." Memorandum at 4-5. Respondent provided 795 documents to the EBSA on December 18, 2020 related to the E&M Price Reduction. Lazor Decl. ¶ 22, Ex. I. Thus, other than a subset of documents withheld based on the Companies' attorney-client privilege, which Respondent logged on detailed privilege logs and provided to the EBSA, *id.*, Exs. B-E, the EBSA has the information sought within its possession, and therefore the Subpoena cannot be enforced.

**b.   The EBSA is Not Entitled to Additional Documents from Respondent.**

12

4849-3476-4261

### i.  Respondent Withheld and Properly Logged Privileged Documents.

The Secretary focuses on documents Respondent withheld as subject to the Companies' attorney-client privilege[5] as the basis for the Petition. The Secretary does not seem to dispute that the logged communications would be protected by the attorney-client privilege if Respondent were not included on them, nor has the Secretary identified any specific documents it challenges are improperly withheld. Instead, the Secretary argues that Respondent's presence on these emails waives the attorney-client privilege. Memorandum at 12-15. Respondent's presence on these communications does not waive privilege because (1) Respondent was a necessary party to privileged communications under *United States v. Kovel*; and (2) Respondent was a *de facto* employee of each Company with respect to the Transactions.

The attorney-client privilege is meant to "encourage full and frank communication between attorneys and their clients." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The privilege exists to "protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Id.* at 390. Thus, communications that are "between a client and its attorney that are intended to be, and in fact were, kept confidential" and sought "for the obtaining or providing of legal advice" are protected by the privilege. *Scheffler v. United States*, 806 F.3d 34, 40 (2d Cir. 2015). The withheld communications involving Respondent and the Companies' counsel were for the purposes of seeking or providing legal advice relating to the Transactions.[6] Kaplan Decl. ¶ 16; Lazor Decl. ¶¶ 17, 28, 30. Respondent understood that all parties intended to, and did, keep these communications

---

[5] Although referenced in the Objection Letter, Respondent has not withheld documents on the basis of the work product doctrine.

[6] Respondent withheld a small number of communications with its own attorneys. Lazor Decl. ¶ 6. These are clearly confidential communications seeking legal advice and are subject to the attorney-client privilege. *See Scheffler*, 806 F.3d at 40.

confidential. Kaplan Dec. ¶ 17. Indeed, Respondent was subject to confidentiality agreements to protect this information. *Id.* ¶ 9. They are therefore privileged under the attorney-client privilege.

### 1. Respondent Was a Necessary Party for the Companies to Obtain Informed Legal Advice.

Because Respondent was a necessary party for counsel to provide informed legal advice to the Companies on a complex corporate transaction governed by a complicated tax and statutory rules, Respondent's presence on these communications does not waive privilege. *See, e.g.*, *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961) (accountant did not destroy attorney-client privilege because it promoted "effective consultation between the client and the lawyer which the privilege is designed to permit."); *Ross v. UKI Ltd.*, No. 02 Civ. 9297 (WHP) (JCF), 2004 U.S. Dist. LEXIS 483, at *8-9 (S.D.N.Y. Jan. 15, 2004) (privilege not waived where a client had a "reasonable expectation of confidentiality under the circumstances," and "disclosure to third party was necessary for the client to obtain informed legal advice."); *Calvin Klein Trademark Trust v. Wachner*, 124 F. Supp. 2d 207 (S.D.N.Y. 2000).

In *Calvin Klein*, for example, the court addressed whether an investment bank's inclusion on communications between Calvin Klein and its attorney in relation to an ultimately unrealized transaction must be disclosed in response to a request for documents in subsequent litigation. *Id.* at 208. In confirming that these documents were subject to the attorney-client privilege, the court noted that "Lazard's roles in participating in those discussions and helping draft these [transaction-related] documents . . . involved rendering expert advice as to what a reasonable business person would consider 'material' in this context," that "a reasonable law firm . . . would not be able to adequately resolve without the benefit of an investment bank's expert assessment[.]" *Id.* at 209. Were the court to reach a different conclusion, it would "render it virtually impossible for a

14

corporate client to have a candid and full discussion with its counsel" regarding complex corporate transactions. *Id.* at 210.

The same is true here. Given Respondent's confidentiality agreements with the Companies and its role as the Companies' financial advisor and its close working relationship with the Companies and their respective management teams, it was reasonable for the Companies, Respondent, and their counsel to believe the communications would remain confidential. Kaplan Decl. ¶ 9, 12-13, 17. Respondent has also continued to treat these communications as confidential. *Id.* ¶ 17. Respondent further provided expertise that neither the Company, nor their counsel, could, that allowed the Company's counsel to provide informed legal advice. *Id.* ¶¶ 10-11. For example, Respondent provided the Companies and their counsel with information necessary to negotiate the terms of the Transaction, and to document corporate and tax matters, Transaction debt financing, acquisition of stock by the ESOP, and numerous related documentation. *Id.* ¶ 10. Without Respondent's ability to confidentially communicate information to the Companies' counsel, counsel would not have been able to provide informed legal advice to the Companies regarding integral aspects of the Transaction. *Id.* Because Respondent's presence on these communications was necessary for the Company's counsel to be able to appropriately render informed legal advice on the Transactions.

### 2. Respondent was a *de facto* employee under the functional equivalent doctrine.

The withheld communications are further subject to each Company's attorney-client privilege for the additional reason that Respondent was a *de facto* employee of each Company for purposes of the Transactions. Where a consultant serves as a *de facto* employee, "disclosure of otherwise privileged documents to them does not operate as a waiver of the attorney-client privilege." *Twentieth Century Fox Film Corp. v. Marvel Enters.*, No. 01 Civ. 3016 (AGS)(HBP),

2002 U.S. Dist. LEXIS 22215, at *7 (S.D.N.Y. Nov. 15, 2002).[7] Likewise, communications between the consultant and the company's attorney are privileged. *Viacom, Inc. v. Sumitomo Corp. (In re Copper Mkt. Antitrust Litig.)*, 200 F.R.D. 213, 218 (S.D.N.Y. 2001) (citing *Upjohn*, 449 U.S. at 390). This is because there is simply "no reason to distinguish between a person on the corporation's payroll and a consultant hired by the corporation as each acts for the corporation and possesses the information needed by attorneys in rendering legal advice." *Id.* at 219.

In determining whether a consultant is a *de facto* employee, "courts look to whether the consultant had primary responsibility for a key corporate job, . . . whether there was a continuous and close working relationship between the consultant and the company's principals on matters critical to the company's position in the litigation, . . . and whether the consultant is likely to possess information possessed by no one else at the company." *Ex.-Imp. Bank of the United States v. Asia Pulp & Paper Co.*, 232 F.R.D. 103, 113 (S.D.N.Y. 2005). Privileged communications disclosed to or facilitated by a financial advisor generally remain protected due to the unique role played by a financial advisor in a transaction. *See, e.g.*, *CSC Recovery Corp. v. Daido Steel Co.*, No. 94 Civ. 9214 (LAP) (THK), 1995 U.S. Dist. LEXIS 7752, at *3 (S.D.N.Y. June 7, 1995). *Cf. Ross*, 2004 U.S. Dist. LEXIS 483, at *16-17.

---

[7] This approach is consistent with other circuits. *See, e.g.*, *In re Bieter Co*., 16 F.3d 929, 939-40 (8th Cir. 1994) (independent contractor "was in all relevant respects the functional equivalent of an employee" for the purposes of applying the attorney-client privilege."); *In re Flonase Antitrust Litig.*, 879 F. Supp. 2d 454, 460 (E.D. Pa. 2012) (privilege applied to confidential communications with independent consultant that was intimately involved with company and played a crucial role in legal and regulatory matters); *U.S. ex rel. Strom v. Scios, Inc.,* No. C05–3004, 2011 WL 4831193, at *4 (N.D. Cal. Oct. 12, 2011) ("[T]he dispositive question is the consultant's relationship to the company and whether by virtue of that relationship he possesses information about the company that would assist the company's attorneys in rendering legal advice."); *Stafford Trading, Inc. v. Lovely,* No. 05–4868, 2007 WL 611252, at *7 (N.D. Ill. Feb. 22, 2007) ("The Court adopts this balanced approach . . . , limiting the privilege to those instances where . . . [the independent consultant] confidentially communicated with . . . counsel for the purpose of obtaining or providing legal advice.").

Here, Respondent was the functional equivalent of an employee of the Companies during the Transactions. Respondent was an essential part of each Company's ESOP team and worked jointly with each Company and their counsel throughout the Transaction. Kaplan Dec. ¶ 12.  For each of the Transactions, Respondent competitively solicited bank financing to fund the Transaction, modeled the terms of repayment for the Company to ensure it could sustainably repay the debt, prepared detailed tax and cash flow models for the Company reflecting the Transaction structure, coordinated due diligence matters with all Transaction parties, and advised the Company on the Transaction process. *Id.* Respondent worked closely with each Company's leadership teams to complete these tasks, which were critical to the formation of the ESOP. *Id.* ¶ 13. No employees at the Companies shared Respondent's expertise regarding these ESOP matters, yet, without Respondent's involvement, an employee of the Company would have needed to acquire this expertise and perform these tasks. *Id.* ¶¶ 14-15. Because Respondent was hired to "perform a corporate function that was necessary in the context of" the Transactions, it was a *de* facto employee that did not waive the Companies' privilege.

### 3.  The Authority cited to by the EBSA is Inconsistent with *Upjohn* and Unpersuasive.

The Court should further decline to follow the authorities cited by the EBSA. *See, e.g.*, *Acosta v. Wilmington Trust, N.A.*, No. 17-CV-6325 (VSB) (KNF), 2019 U.S. Dist. LEXIS 16632 (S.D.N.Y. Feb. 1, 2019); *Harris v. Jacobson*, No. 13-MC-213 (JPO) (S.D.N.Y. Aug. 6, 2013). These cases limit the attorney-client privilege to an untenable position, inconsistent with the principles in *Upjohn*, by severely inhibiting the "full and frank communication between attorneys and their clients" in complex corporate transactions governed by a complicated statutory scheme. They do this by effectively precluding ***any*** communication between a company, its attorney, and

17

its investment bank from being protected by the attorney-client privilege even where it is necessary for the attorney to provide informed legal advice. *Upjohn*, 449 U.S. at 389.

Further, the court in *Acosta v. Wilmington Trust* did not address the application of the functional equivalent doctrine but looked only to whether the investment bank was a necessary party to the communications, improperly concluding that a formal agency relationship is required. 2019 U.S. Dist. LEXIS 16632, at *15-18. As addressed above, and as the EBSA admits in its Petition, Second Circuit courts have recognized that a third-party acting as the functional equivalent of an employee does not waive the attorney-client privilege. *See, e.g.*, *Twentieth Century Fox Film Corp.*, 2002 U.S. Dist. LEXIS 22215, at *7; Memorandum at 13 (outlining the requirements to satisfy the functional equivalent doctrine). Because Respondent was the functional equivalent of an employee, the decision in *Acosta v. Wilmington Trust* is in applicable.

And, under the necessary party analysis, no formal agency relationship is required to protect privileged communications from disclosure. *Ross*, 2004 U.S. Dist. LEXIS 483, at *9. Instead, "the relationship between the client and the third party must be sufficiently close that the client's subjective expectation of confidentiality is reasonable." *Id.* Here, the relationship between Respondent and the Companies was so close that the expectation of confidentiality was reasonable. Kaplan Decl. ¶ 9, 12-13, 17. Thus, *Acosta v. Wilmington Trust* is unpersuasive.

### ii. Any Communications Concerning or with the Sellers Not Already Produced Are Not Relevant to the EBSA's Investigatory Authority.

The only remaining category of documents Respondent has not produced to the EBSA are any post-Transaction communications "concerning" or "with" the Transaction sellers after March 2019, multiple years after the Transactions closed and regardless of the topic. Under a plain reading of the EBSA's Subpoena, if a company sponsors an ERISA-governed plan, ***any*** communication between the company and ***any*** third-party ***regardless of the topic*** would fall within the EBSA's

18

investigative authority. Because communications not relevant to an ERISA-governed plan are outside the EBSA's investigative authority, the Petition should be denied.

Although this Court interprets relevancy broadly when enforcing administrative subpoenas, "the relevance of the sought-after information is measured against the general purposes of the agency's investigation, which necessarily presupposes an inquiry into the permissible range of investigation under the statue." *NLRB v. Am. Med. Response, Inc.*, 438 F.3d 188, 193 (2d. Cir. 2006). Thus, "a government investigation into corporate matters may be of such a sweeping nature and so unrelated to the matter properly under inquiry as to exceed the investigatory power." *RNR Enters.*, 122 F.3d at 97 (quoting *States v. Powell*, 379 U.S. 48, 57-58 (1964)). Where that occurs, the agency's determination of relevancy should be disregarded because it is "obviously wrong." *See Am. Med. Response*, 43 F.3d at 193.

The EBSA only has statutory authority to investigate if a person "has violated or is about to violate" ERISA. 29 U.S.C. § 1134(a)(1). Thus, although Section 504 gives the EBSA authority to investigate the Transactions and the ESOPs, it does not give the EBSA *carte blanche* to investigate any documents "concerning" or "with" the sellers years after the Transactions and not related to whether a person violated ERISA.

The Secretary states he is only seeking documents "related to [Respondent's] work associated with four ESOPs," Memorandum at 8. As detailed at length above, Respondent believes it has already produced all documents related to the Transactions and the E&M Price Reduction, including communications with the sellers, and has done no additional on behalf of the Companies on their ESOPs or any other ERISA-governed plan sponsored or maintained by the Companies. Kaplan Decl. ¶¶ 19-20; Lazor Decl. ¶¶ 3, 5, 15-16, 18, 22, 26, 27. Other than the documents withheld based on the Companies' attorney-client privilege, there is nothing left.

19

The Subpoena, however, broadly requires Respondent[8] to produce *all* communications "concerning or with" the sellers "both pre- and post-Transaction." Subpoena at 7. Considering this is a separate request not limited only to communications "concerning or relating to the Transactions," or even an ERISA-governed plan, the EBSA is plainly requesting that Respondent produce *all* its communications "concerning" or "with" the sellers, including those not relevant to any ERISA-governed plan. Taking the EBSA's approach, *any* communications between a company that sponsors an ERISA plan and *any* third-party *regardless of the topic* would fall within the EBSA's investigative authority. This regulatory overreach is clearly not anticipated by ERISA, which limits the EBSA's investigative authority only to determining whether a person violated ERISA. 29 U.S.C. § 1134(a)(1). Communications unrelated to an ERISA-governed plan have no relevance to whether any person violated ERISA and fall outside the scope of the EBSA's investigative authority.

Rather than make any *prima facie* showing of the relevancy of *all* communications "concerning" or "with" the sellers, the Secretary conclusory states that the "documents sought are necessary to determine whether the ESOPs were established and administered prudently and in the best interests of its participants, and whether the prohibited transactions that occurred here were non-exempt." Memorandum at 8. The Secretary fails to even attempt explain how *all* potential communications with the sellers, which include those not related to an ERISA-governed plan, are relevant this determination. *See id.* As discussed above, however, any determination that *all* these communications are relevant, regardless of topic, is "obviously wrong," *Am. Med. Response*, 43 F.3d at 193.

---

[8] The Subpoena defines Respondent to include its "Affiliates," which is not defined. The Subpoena is therefore vague.

And, even if these communications were at all relevant to whether a person violated ERISA, which they are not, the Secretary failed to show any need for this material beyond mere relevance to the investigation, a required showing when seeking personal records of individuals who are not targets of the investigation. *McVane v. FDIC (In re McVane)*, 44 F.3d 1127, 1138 (2d Cir. 1995). The Secretary acknowledges that neither Respondent, nor the Transaction sellers, are the subject of the investigation. *See* Memorandum at 1 (noting the investigation is of "of five employee stock ownership plans"). The sellers are, however, individuals with constitutional rights to privacy over their personal affairs without unreasonable government intrusion. *McVane*, 44 F.3d at 1136-1138. Beyond a conclusory assertion that this material is necessary, which the Second Circuit in *McVane* criticized as insufficient, the Secretary has made no showing the EBSA needs this information. *See id.* at 1138-1139 (need not shown where the FDIC did not substantiate its conclusory allegations material was necessary). Because communications "concerning" or "with" the sellers are irrelevant to the EBSA's investigation, fall outside the EBSA's investigative authority, and the Secretary cannot show a need to intrude on the individual sellers' right to privacy, the Subpoena not be enforced as to the demand for communications "concerning" or "with" the sellers.

### c. The Secretary is Not Entitled to Tolling of the Statute of Limitations.

In connection with the enforcement action, and without much detail, the Secretary broadly seeks to toll the "applicable statute of limitations." (Memorandum at 16-17). The Secretary's general request to toll the statute of limitations to "[t]o mitigate the effect of [Respondent's] actions on the ***investigation***" is troubling and improper. Memorandum at 17 (emphasis added). Respondent is not the subject of the investigation. Memorandum at 1-2. Rather, the EBSA states in the Petition that the investigation is of "of five employee stock ownership plans," including an ESOP with which Respondent was not involved. *Id*. Neither the sponsoring companies for these

ESOPs nor the independent trustee who represented the ESOPs' participants are before this Court even though those entities may be impacted by a tolling of the statute of limitations related to the "investigation." Should the Court order a tolling of the statute of limitations as to the "investigation," it would improperly and significantly prejudice the rights of third parties not before this Court. *Cf. Crouse-House Co. v. InterNorth, Inc.*, 634 F.2d 690, 701 (2d Cir. 1980) (third party's required where its rights would be "clearly prejudiced if the relief sought by [the plaintiff] were to be granted."). Nor is deciding whether to toll the statute of limitations appropriate in an administrative subpoena enforcement proceeding. *Perez v. La Health Servs. & Indem. Co.*, No. 15-mc-61-BAJ-RLB, 2015 U.S. Dist. LEXIS 122636, at *7-8 (M.D. La. Sept. 15, 2015) (declining to decide whether to toll the statute of limitations in a subpoena enforcement action).

Even if this proceeding were a proper vehicle to toll the statute of limitations for the "investigation," tolling is appropriate only where the Secretary has "diligently pursued" the claim "but was prevented from filing suit by extraordinary circumstances." *Guo v. IBM 401(k) Plus Plan*, No. 13-CV-8223 (KMK), 2016 U.S. Dist. LEXIS 126360, at *17 (S.D.N.Y Sept. 15, 2016). The burden of justifying equitable tolling falls on the Secretary. *Id.* at *18. The Secretary cannot meet that burden.

First, the EBSA did not diligently pursue its investigation. Respondent produced 25,504 documents on April 5, 2019, just over six weeks after receiving the Request for Documents and on the date agreed to with the EBSA and provided four detailed privilege logs. Lazor Decl. ¶¶ 5-7, Ex A. Then, rather than immediately engaging with Respondent regarding the claims of privilege, the EBSA sat on its rights for over ten months before contacting Respondent on February 19, 2020 regarding the claims of privilege. *Id.* ¶ 8. In March and April 2020, Respondent diligently explained the basis for the privilege claims. *Id.* ¶ 9-10, Ex. F. It was not until August 2020, almost

4849-3476-4261

a year and a half after Respondent first asserted the privileges, that the EBSA first argued that Respondent's claim of privilege was improper. *Id.* ¶ 11. Respondent then produced additional documents and four more supplement privilege logs. *Id.* ¶¶ 15-16, Exs. G., H. The EBSA waited until November 6, 2020—a year and seven months after Respondents initially claimed the privilege at issue, to issue the Subpoena. *Id.* ¶¶ 6, 19. After Respondent objected to the Subpoena less than two weeks later, Secretary waited an additional four months to institute this action, without first attempting to meet and confer, seeking tolling of the statute of limitations for the first time. *Id.* ¶¶ 20, 23. Where the statute of limitations is at most six years, the EBSA wasted a third of that time failing to pursue the documents it now demands despite knowing on April 5, 2019 that Respondent claimed privilege over them. The EBSA therefore did not diligently pursue the documents it now seeks, let alone any potential claim relating to the "investigation."

Nor has the EBSA been prevented from filing suit by extraordinary circumstances. Respondent provided the EBSA with over 26,000 documents and participated in over 16 hours of interviews related to the four Transactions at issue. *Id.* ¶¶ 18, 22. Not only did Respondent not obstruct the investigation, it actively cooperated with the EBSA. Respondent therefore did not prevent "by extraordinary circumstances" the Secretary from filing a lawsuit within the applicable statute of limitations. The tolling request and the Petition should be denied.

## V.   CONCLUSION

For each of the foregoing reasons, the Court should deny the relief requested in the Secretary's Petition.

4849-3476-4261

Dated: Cincinnati, Ohio
      April 16, 2021

Respectfully submitted,

THOMPSON HINE LLP


By: */s/ Melanie M. Lazor*
    Melanie M. Lazor (*pro hac vice*)
    Melanie.Lazor@ThompsonHine.com
    312 Walnut Street, Suite 2000
    Cincinnati, Ohio 45202
    Telephone: 513.352.6554
    Facsimile: 513.241.4771

    Emily J. Mathieu
    Emily.Mathieu@ThompsonHine.com
    335 Madison Avenue
    12th Floor
    New York, NY  10017
    Telephone:  212.344.5680
    Facsimile:  212.344.6101


*Attorneys for Respondent CSG Partners, LLC*

24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 16, 2021, I caused to be served on all counsel of record, electronically via the Court's electronic filing system, a true and correct copy of the foregoing document.

 Dated: April 16, 2021

<div style="margin-left:40%">

*/s/ Melanie M. Lazor*       
Melanie M. Lazor

*Counsel for Petitioner*
*CSG Partners, LLC*

</div>

25

4849-3476-4261