```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
MARTIN J. WALSH, Secretary of Labor,                        :
United States Department of Labor,                          :
                                                            :
                                      Petitioner,           :
                                                            :       21-MC-345 (GHW) (RWL)
                v.                                          :
                                                            :       ORDER:
CSG PARTNERS, LLC,                                          :       MOTION TO ENFORCE SUBPOENA
                                                            :
                                      Respondent.           :
                                                            :
------------------------------------------------------------X
```

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Petitioner, the United States Secretary of Labor, seeks to enforce an administrative subpoena issued on November 6, 2020 (the "Subpoena") by the Employee Benefits Security Administration (the "Administration") to Respondent CSG Partners, LLC ("CSG"). The instant motion presents three issues: (1) whether CSG has properly withheld documents on the basis of the attorney-client privilege, (2) whether CSG must produce post-transaction documents, and (3) whether the relevant statute of limitations should be tolled from the time the Subpoena issued to the time that CSG fully complies. For the following reasons, the motion is GRANTED in part and DENIED in part.[1]

## Background

CSG is an investment bank specializing in Employee Stock Option Plans or "ESOPs." ESOPs are a form of employee pension benefit plans, governed by the statute known as ERISA. On November 28, 2017, the Administration opened an investigation of

---

[1] This decision was read into the record at oral argument on June 8, 2021.

five ESOPs to determine whether any person violated or is about to violate ERISA or any regulation or order issued thereunder.  The five ESOPs each are sponsored by a different company, but all have the same trustee, and each purchased stock from its sponsoring company's prior shareholders.

CSG served as financial advisor for four of the five ESOP transactions.  A declaration from CSG's managing partner, Lawrence Kaplan (referred to herein as the Kaplan Declaration or Kaplan Decl.), explains the services CSG provided to the ESOP sponsors.  Among other tasks, CSG solicited financing, modeled debt repayment terms, prepared tax and cash flow models, coordinated due diligence, assisted with closing, and generally advised on the transaction process.  CSG worked closely with each company's business personnel and legal team and contributed expertise and knowledge that the companies and their counsel did not have.  CSG also contractually agreed with each client that CSG would keep the client's information confidential.

As part of its investigation, the Administration issued informal document requests to CSG concerning the ESOP transactions and CSG's communications with its business clients.  In response, CSG produced more than 25,000 documents.  CSG also provided privilege logs for each of the four ESOPs, collectively listing thousands of documents withheld on the basis of attorney-client privilege.  Many of those documents are communications involving CSG, CSG's ESOP clients, and those clients' legal counsel.  CSG informed the Administration that it asserted the attorney-client privilege on behalf of its clients, not for itself.  In addition to withholding documents for which it asserted privilege, CSG objected to producing any documents for the period following the closing date of each ESOP.

The Administration challenges CSG's assertion of attorney-client privilege and CSG's refusal to produce post-closing documents. The Administration also requests equitable tolling of the statute of limitations with respect to filing an ERISA claim against CSG based on the delay caused by the instant discovery dispute. The Court will address each issue in turn.

## **Attorney-Client Privilege**

The privilege dispute turns on the fact that CSG either sent or received communications between its company clients and/or those company's counsel. The Administration argues that the attorney-client privilege either did not attach or was waived by inclusion of CSG as a third party. In opposition, CSG asserts that the documents at issue are privileged for two reasons: first, CSG was a necessary party for its clients to obtain informed legal advice about formation of the ESOPs; and, second, CSG was a de facto employee of its client companies under the functional equivalent doctrine. CSG's arguments do not survive scrutiny under this Circuit's law.

The Second Circuit narrowly circumscribes the attorney-client privilege, which, as it suggests, attaches to communications between client and counsel for purposes of soliciting or providing legal advice. Communications between an attorney and someone who is not their client generally are not protected by the privilege. Similarly, the privilege generally is deemed to have been waived if communications between attorney and client are shared with a third party. Here, CSG was neither the attorney nor the client whose privilege is at issue. Ordinarily, that would doom any assertion of attorney-client privilege.

Things become less clear cut, however, when the third party is intimately involved in the transaction or event about which the attorney advises their client. Examples of

3

such third parties include accountants, public relations firms, regulatory consultants, advertising agencies, compensation consultants, and financial advisors. In some instances, courts have found that the attorney-client privilege can be maintained even when a third party is involved in the communications.

CSG thus cites to *United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961). In that case, the district court held that communications between a lawyer and an accountant employee of the same law firm regarding a client matter destroyed the attorney-client privilege because the accountant was not a lawyer. The Second Circuit vacated on the basis that the district court had not adequately developed the record as to what purpose the accountant served by participating in the communications. The Second Circuit recognized that the attorney may have required information from the accountant in order to be able to advise the client on the tax consequences of a business transaction. The Court emphasized that the accountant, as an employee of the law firm, was an agent of counsel. The Court also analogized the accountant to a translator of a foreign language, commenting that "accounting concepts are a foreign language to some lawyers in almost all cases, and to almost all lawyers in some cases." *Id.* at 922. The Court acknowledged that the complexities of the modern world, as compared to Tudor times when the privilege was first recognized, necessitated that lawyers in some instances work with non-lawyers to effectively translate or provide information that the attorney or its client itself could not. *Id.* at 921.

Thirty-eight years later, in *United States v. Ackert*, 169 F.3d 136 (2d Cir. 1999), the Second Circuit held that preservation of the attorney-client privilege when a third party is involved as recognized in *Kovel* did not apply to communications between an investment

4

bank and its client company's lawyers. There, Ackert, who worked for Goldman Sachs, proposed to Paramount Communications a potential transaction that would lower its income tax liability. In order to provide legal advice to Paramount about the legal and financial implications of the transaction, Paramount's tax counsel reached out to Ackert to discuss various aspects of the proposed transaction and its tax consequences. Years later, the IRS conducted an audit and issued a summons to Ackert to provide testimony about the proposed investment. Ackert objected to answering questions about his conversations with Paramount's attorney on the basis of attorney-client privilege. The IRS challenged that objection before the Magistrate Judge, who sustained the objection.

On appeal, however, the Second Circuit reversed, because the *Kovel* exception only applies "if the purpose of the third party's participation is to improve the comprehension of the communications between attorney and client." *Id.* at 139. The Court found that rather than relying on Ackert "to translate or interpret information given to [Paramount's attorney] by his client," the attorney sought information from Ackert that Paramount did not have about the proposed transaction and its tax consequences. As a result, communications between Paramount and its investment banker were not protected.

The situation here is similar. CSG did not serve to improve comprehension between the ESOP companies and the companies' counsel. Rather, CSG provided information and advice that the companies did not have. As the Court in *Ackert* explained, "the [attorney-client] privilege protects communications between a client and an attorney, not communications that prove important to an attorney's legal advice to a client." *Id.* The Second Circuit reiterated that principle in 2011 and characterized the *Kovel* exception

5

as having "always been a cabined one." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011).  Accordingly, *Kovel* does not advance the ball for CSG.

In addition to arguing that its advice was necessary for its clients' lawyers to provide legal advice, CSG offers a second argument under the functional equivalent doctrine.  The Second Circuit has not yet adopted that doctrine; and some district courts have expressed skepticism about whether it would do so.  This Court will not attempt to divine the answer to that question here, because even if the doctrine applied, its requirements would not be met.

Under the functional equivalent doctrine, where a consultant serves as a de facto employee of a company, communications between the consultant and the company's lawyers are protected by the attorney-client privilege, and disclosure to the consultant of privileged communications to which the consultant was not a party does not waive the privilege.  That makes sense because there is little reason if any "to distinguish between a person on the corporation's payroll and a consultant hired by the corporation if each acts for the corporation and possesses the information needed by attorneys in rendering legal advice."  *In re Copper Market Antitrust Litigation*, 200 F.R.D. 213, 219 (S.D.N.Y. 2001).

To determine if a consultant is the functional equivalent of an employee, courts have looked to a number of factors, including among others: (1) whether the consultant had a primary responsibility for a key corporate job; (2) whether the consultant had a continuous and close working relationship with the company's principals on matters critical to the company's position in litigation; (3) whether the consultant is likely to possess information possessed by no one else at the company; (4) whether the

6

consultant exercised independent decision-making on the company's behalf; (5) whether the consultant served as a company representative to third parties; and (6) whether the consultant sought legal advice from corporate counsel to guide his or her work for the company.  See *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litigation*, 352 F. Supp.3d 207, 213 (E.D.N.Y. 2019); *Narayan v. Sutherland Global Holdings Inc.*, 285 F. Supp.3d 604, 615 (W.D.N.Y. 2018); *Church & Dwight Co, Inc. v. SPD Swiss Precision Diagnostics, GmbH*, No. 14-CV-585, 2014 WL 7238354, at *2-3 (S.D.N.Y. Dec. 19, 2014).

As the proponent of the privilege, CSG bears the burden of establishing that it applies.  CSG has not done so here.  First, even though CSG provided expert advice and knowledge about ESOP transactions, there is no evidence before the Court that CSG had a primary responsibility for "a key corporate job" at any one of its clients.  CSG has not even described the corporate structures of its clients or set forth what personnel each client did or did not have to perform particular jobs.

Second, although CSG had a close working relationship with company leadership, there is no evidence that CSG did so with respect to the company's position in litigation.  To the contrary, the working relationship between CSG and each company was to effectuate a business transaction.  The fact that various participants may have been concerned about potential litigation in the future does not alter the analysis.  The same can be said of almost any complex corporate business transaction.

Third, although CSG is an expert in its field, it has not provided any evidence as to what information it possessed that no one else at each of its clients would not have

possessed or could not have developed on their own. Merely providing expert advice and services is not enough.

Fourth, CSG has not submitted evidence that it had independent decision-making on behalf of any of the four ESOP companies. The Kaplan Declaration indicates that CSG provided information necessary to negotiate terms of the transactions and to document various aspects of the transactions; solicited bank financing to fund the transactions; prepared models addressing repayment terms, taxes, and cashflows; coordinated due diligence; and advised each company on the transaction process. None of those tasks as described by Mr. Kaplan state or even suggest that CSG maintained independent decision-making authority for the companies.

Fifth, there also is no evidence before the Court that CSG served as a representative of its client companies to third parties. Among the services described in the Kaplan Declaration, the task that appears to come closest to such representation is the solicitation of bank financing, but exactly what CSG did and the extent to which it was acting as an agent if at all remains speculative.

Finally, CSG has not put forth any evidence that it solicited legal advice from the ESOP companies' legal counsel as opposed to having provided information from CSG to the companies and their legal counsel. The Kaplan Declaration amorphously states that "CSG was included on certain communications involving each Company's counsel that were for the purpose of seeking or providing legal advice." (Kaplan Decl. ¶ 16.) But the Declaration does not indicate that the legal advice sought was by CSG, as distinct from the lawyers' company clients.

8

In sum, CSG has not established that it was the functional equivalent or de facto employee of any of the four entities whom it advised and assisted with the ESOP transactions.

Within this District, at least two courts have addressed the same factual scenario presented here; that is, investment banks providing services to companies forming ESOPs. *Acosta v. Wilmington Trust, N.A.*, No. 17-CV-6325, 2019 WL 416329 (S.D.N.Y. Feb. 1, 2019); *Harris v. Jacobson*, 13-MC-213, Dkt. 32 (S.D.N.Y. August 22, 2013) (transcript of oral argument and decision delivered from the bench).  Both courts found that including the investment banks in communications with the ESOP companies and their attorneys precluded or waived the companies' attorney-client privilege with respect to those communications.

In *Harris*, Judge Oetken addressed the assertion of attorney-client privilege over communications involving an ESOP and one of CSG's investment bank competitors.  The court found that there was no privilege, and that any such privilege as between the ESOP company and its counsel had been waived, because the investment bank was merely a service provider hired to do a task as part of a large financial transaction.  The court also held that the respondents had failed to meet their burden to show that investment bank personnel were acting as functional employees of the ESOP company.  More recently, in *Acosta*, the court rejected assertion of attorney-client privilege over documents involving communications between an ESOP company and another one of CSG's investment bank competitors.  The *Acosta* court based its holding on the fact that the investment bank was not an agent of the company and had disclaimed any such agency relationship in its retention agreement with the company.

CSG urges this Court not to follow *Harris* and *Acosta*, and instead follow the decisions in two older district court cases, *Ross v. UKI Ltd.*, No. 02-CV-9297, 2004 WL 67221 (S.D.N.Y. Jan. 15, 2004), and *Calvin Klein Trademark Trust v. Wachner*, 124 F. Supp.2d 207 (S.D.N.Y. 2000).

In *Ross*, Magistrate Judge Francis ruled on a number of documents from meetings attended by attorneys, their client companies, and certain third parties. In one circumstance, the third party was an independent contractor who provided financial services to one of the client companies. The contractor was functionally the head of the company's finance department, who worked almost exclusively at the company's offices, wrote to third parties on the company's letterhead, and attended meetings on behalf of the company. Those circumstances are quite different than those here, and, unsurprisingly, the court found the contractor to be a functional equivalent of a company employee and upheld the privilege despite his presence at meetings. Similarly, the court found that a real estate management service was a functional equivalent and necessary participant where the service supervised the day-to-day property managers at properties owned by one of the client companies.

Judge Francis also found, however, that the privilege had not been waived where meetings included tax accounting advisors who had a particularly close and continuous working relationship with the companies and were regularly included in meetings with counsel. The court found the accountants' presence necessary for the lawyers to provide legal advice and upheld the privilege in that circumstance. Judge Francis' reasoning with respect to the accountants was brief, and did not include analysis of case law.

10

This Court finds more persuasive Judge Francis' ruling the following year in *Export-Import Bank of the United States v. Asia Pulp & Paper Co., Ltd.*, 232 F.R.D. 103 (S.D.N.Y. 2005). In that case, Judge Francis conducted a much more detailed analysis and concluded that the attorney-client privilege was waived for communications that included attorneys, their client company, and the company's outside financial advisor consultant who provided advice about the company's debt restructuring. The company for which the consultant provided advice did not have management level personnel with restructuring experience, and the consultant occupied a broad role with considerable responsibility. The court nevertheless rejected the company's arguments that the communications were protected by either *Kovel* or the functional equivalent doctrine. Addressing the functional equivalent doctrine in particular, Judge Francis observed that if the doctrine "were extended to every situation where a financial consultant worked exhaustively to guide a company through a restructuring deal, the exception would swallow the basic rule … that there is no privilege protecting communications between clients and their accountants." *Id.* at 114.

Turning to *Calvin Klein*, the other case relied on by CSG, Judge Rakoff was confronted there with the assertion of privilege by a company over communications involving the company, its outside counsel, and an investment banking firm providing guidance on a potential sale of the company. The court upheld the assertion of privilege with respect to a specific group of documents, finding that the investment bank's role was necessary to help the attorneys determine what was "material" from a business perspective and therefore what was material for legal disclosure purposes. The court concluded that in that context, the investment banker served an interpretive function akin

11

to the accountant in *Kovel*. The evidence CSG has put before the Court does not show that it played a similar interpretive function here.

CSG also argues that following the *Harris* and *Acosta* decisions would be inconsistent with the Supreme Court's decision in *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981), because it will inhibit "full and frank communication between attorneys and their clients" in complex corporate transactions governed by a complicated statutory scheme. According to CSG, *Harris* and *Acosta* effectively prelude any communication between a company, its attorney, and its investment bank from being protected by the attorney-client privilege even where it is necessary for the attorney to provide informed legal advice. (Respondent's Opposition Brief (Dkt. 18) at 17-18.)

While the Court does not agree with such a sweeping conclusion, the Court is not unsympathetic to CSG's argument. Discussion of legal issues and advice on complex matters often require the expertise and assistance of third parties. It is not unreasonable to envision discussions in which attorneys and clients, absent preservation of the attorney-client privilege, are inhibited in their comments because a third-party advisor is present, yet neither the attorney nor client have the requisite information to be able to have a fully frank and informed discussion without the third party. Nonetheless, this Court is bound to follow the law of this Circuit, and it is clear from both the Second Circuit's decisions and the weight of district court authority within the Circuit that the assertion of privilege under the facts of this case cannot be sustained.

CSG's assertion of attorney-client privilege with respect to the communications at issue is over-ruled.

### **Post-Closing Documents**

The parties' briefing suggests that the parties do not substantially disagree about production of additional communications. CSG's primary concern is that Petitioner's requests asking for "any" communications with CSG's clients are far too broad. Meanwhile, Petitioner asserts that the requests are not so broad as CSG believes; accuses CSG of a "blanket attempt to declare all post-transaction documents irrelevant"; and trains its focus on all communications between CSG and the sellers that relate in some way to the ESOPs. (Petitioner's Reply Brief (Dkt. 22) at 7-8.) The Court agrees that that narrower focus appropriately defines the scope of what is relevant and appropriately subject to production. Accordingly, the Court orders CSG to produce all post-closing communications with the sellers concerning the four ESOPs.

### **Tolling**

Finally, Petitioner requests that the Court equitably toll the six-year statute of limitations on a potential ERISA claim against CSG for the time between Petitioner's issuance of the Subpoena and the time that Petitioner notifies the Court that CSG is in full compliance. The Court declines to determine that issue at this time and believes it best left to a later juncture if and when Petitioner asserts a claim against CSG.

### **Conclusion**

As set forth above, Petitioner's motion to enforce is GRANTED in part and DENIED in part. Within 21 days of this Order, Respondent CSG shall produce the records and documents as directed by this Order. Petitioner's request to equitably toll the statute of limitations is denied without prejudice.

SO ORDERED,

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: June 16, 2021
New York, New York